CITY OF GARLAND, Texas, Appellant,

v.

Frank R. BOOTH, et al., Appellees.

No. 05–93–00134–CV.

Court of Appeals of Texas,
Dallas.

Jan. 27, 1995.

Rehearing Denied March 21, 1995.

Brad Neighbor, Dorothy G. Palumbo, Charles M. Hinton, Jr., First Asst. City Atty. and Asst. City Atty., The City of Garland, Tex., Garland, for appellant.

Schuyler B. Marshall, Beverly Ray Burlingame, Thompson & Knight, P.C., Dallas, for appellees.

Before THOMAS, C.J.,[1] and OVARD and BARBER, JJ.

## OPINION

THOMAS, Chief Justice.

This appeal presents two basic issues. First, we must decide whether a party can assign its legal malpractice claims to its adversary in the underlying litigation. Second, we must determine whether attorneys' fees expended to disqualify an opponent's attorney are recoverable in a separate malpractice action. The City of Garland appeals a summary judgment rendered in favor of attorneys Frank R. Booth and Bernard D. "Skip" Newsom and their firm, Booth & Newsom P.C. (collectively, appellees). In six points of error, Garland contends generally that (i) legal malpractice claims can be assigned in Texas and (ii) fact issues exist precluding summary judgment on its direct claims. We affirm in part and reverse and remand in part.

## FACTUAL BACKGROUND

In 1977, Garland entered into contracts with the cities of Rowlett and Sachse to treat their wastewater. Robin Lloyd, a partner in a predecessor firm to Booth & Newsom, negotiated and drafted the sewer contracts on behalf of Garland. Frank Booth was a partner in the firm. In 1984, the firm split. Lloyd formed a new firm, and Booth formed Booth & Newsom. Lloyd's firm continued to represent Garland.

In 1988, a dispute arose over the rates Garland charged to treat the wastewater. Garland filed a declaratory judgment action against Sachse and Rowlett, seeking a declaration of rights and obligations under the

---

1. The Honorable Linda Thomas was on the original panel at the time this cause was submitted for decision. Justice Thomas was sworn in as Chief Justice on January 1, 1995.

contracts. Sachse and Rowlett hired appellees to represent them and counterclaimed against Garland. Garland sought to disqualify appellees on the basis that they formerly represented Garland in a substantially related matter, i.e., drafting of the contracts in dispute. Following a ten-day hearing, the trial court disqualified appellees. Nine months later, the three cities settled the underlying litigation. As part of the settlement, Rowlett and Sachse assigned to Garland any of their causes of action against appellees and waived the attorney-client privilege.

Subsequently, Garland sued appellees, alleging it was forced to spend $675,000 in attorneys' fees to disqualify appellees from representing Rowlett and Sachse. Garland asserted disqualification was necessary to protect confidential information disclosed to appellees during the former representation and to prevent appellees from using that information against Garland in the wastewater litigation. Garland alleged direct claims of malpractice, breach of fiduciary duty, and unconscionable conduct under the Deceptive Trade Practices Act (DTPA). As damages, Garland claimed its attorneys' fees and costs associated with both the disqualification proceeding and being prevented from entering settlement negotiations until the dispute over legal representation was resolved.

Additionally, Garland, as assignee of Rowlett and Sachse, sued appellees for breach of contract/restitution, negligence, breach of fiduciary duty, and DTPA violations of breach of express warranty and unconscionability. As damages, Garland sought the attorneys' fees and costs incurred by Rowlett and Sachse in the disqualification proceeding.

The trial court granted summary judgment in favor of appellees. The court specifically granted summary judgment on the assigned claims on the basis that legal malpractice claims are not assignable in Texas. As to Garland's direct claims, the court found there were no genuine issues of material fact. We will address the arguments presented under each set of claims.

## SUMMARY JUDGMENT

■ The function of a summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). In reviewing a summary-judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed fact issue precluding summary judgment, we must take the evidence favorable to the nonmovant as true.

3. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.

*See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ The purpose of the summary-judgment rule is not to provide either a trial by deposition or a trial by affidavit. Rather, its purpose is to provide a method of summarily terminating a case when it clearly appears only a question of law is involved and no genuine issues of fact remain. *Port Distrib. Corp. v. Fritz Chem. Co.,* 775 S.W.2d 669, 671 (Tex.App.—Dallas 1989, writ dism'd by agr.).

■ To prevail on summary judgment, a defendant as movant must either (1) disprove at least one element of each of the plaintiff's theories of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

■ When the summary judgment order does not specify the ground or grounds on which it is based, we will uphold the order on any ground asserted by the movant that is

meritorious. *Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 79 (Tex.1989). When the order specifies the grounds on which it bases summary judgment, we limit our review to those grounds. *See Delaney v. University of Houston*, 835 S.W.2d 56, 58 (Tex.1992). *But c.f. State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374 (Tex.1993) (plurality op.) (in concurring and dissenting opinions, five justices indicated they would consider grounds not expressed in the trial court's order under proper circumstances).

## ASSIGNABILITY OF MALPRACTICE CLAIMS

### A. Negligence/Breach of Fiduciary Duty

■ In the first point of error, Garland asserts summary judgment was improper on the assigned claims of negligence and breach of fiduciary duty because, contrary to the trial court's ruling, legal malpractice claims may be assigned in Texas. Garland reasons that because causes of action for personal injuries may be sold or assigned and legal malpractice is a tort, such claims should be assignable.

Appellees argue in response that policy considerations and the nature of the attorney-client relationship preclude such assignments. Because we agree with appellees and the reasoning set forth in *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313 (Tex. App.—San Antonio 1994, writ ref'd), we hold that legal malpractice claims are not assignable.

In *Zuniga*, the court held that "assignment of a legal malpractice claim arising from litigation is invalid."[2] *Zuniga*, 878 S.W.2d at 318. In so holding, the court followed a majority of states that have rejected assigna-

bility of such claims, primarily on public policy grounds. *See Schroeder v. Hudgins*, 142 Ariz. 395, 399, 690 P.2d 114, 118 (Ct.App. 1984); *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83, 87 (1976); *Roberts v. Holland & Hart*, 857 P.2d 492, 495–96 (Colo.Ct.App.1993, cert. denied); *Aaron v. Allstate Ins. Co.*, 559 So.2d 275, 276–77 (Fla.Dist.Ct.App.) (per curiam), *review denied*, 569 So.2d 1278 (1990); *Brocato v. Prairie State Farmers Ins. Ass'n*, 166 Ill.App.3d 986, 117 Ill.Dec. 849, 850, 520 N.E.2d 1200, 1201 *appeal denied*, 121 Ill.2d 567, 122 Ill.Dec. 434, 526 N.E.2d 827 (1988); *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 339–45 (Ind.1991); *Bank IV Wichita, Nat'l Ass'n v. Arn, Mullins, Unruh, Kuhn & Wilson*, 250 Kan. 490, 827 P.2d 758, 765 (1992); *Coffey v. Jefferson County Bd. of Educ.*, 756 S.W.2d 155, 157 (Ky.Ct.App.1988); *Moorhouse v. Ambassador Ins. Co.*, 147 Mich.App. 412, 383 N.W.2d 219, 221 (1985, appeal denied); *Wagener v. McDonald*, 509 N.W.2d 188, 191 (Minn.Ct.App.1993); *Chaffee v. Smith*, 98 Nev. 222, 645 P.2d 966, 966 (1982) (per curiam).[3]

The policy considerations underlying these courts' rejection of assignability of claims was perhaps best articulated by the California appellate court in *Goodley*. There, the court focused on the unique quality of legal services, the personal nature of the attorney's duty to the client, and the confidentiality of the attorney-client relationship. The court reasoned that to allow assignability of such claims would relegate the legal malpractice action to the marketplace and convert it to a commodity to be exploited and transferred to an economic bidder who may have had no professional relationship with the attorney.

---

2. The court rejected as dictum, unsupported by reasoning or authority, a statement by the Corpus Christi Court of Appeals that "[a] part or all of a claim for legal malpractice can be assigned, just as any other negligence action." *Zuniga*, 878 S.W.2d at 314 (quoting *Stonewall Surplus Lines Ins. Co. v. Drabek*, 835 S.W.2d 708, 711 (Tex.App.—Corpus Christi 1992, writ denied) (en banc)). The *Zuniga* court noted that on the same day the supreme court denied review in *Drabek*, it expressly left open the question whether a legal malpractice claim is assignable. *Zuniga*, 878 S.W.2d at 315 (citing *American Centennial Ins.*

*Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 n. 6 (Tex.1992) & *American Centennial Ins. Co.*, 843 S.W.2d at 486 (Hecht, J., concurring)).

3. A few states allow assignability of malpractice claims. *See Thurston v. Continental Casualty Co.*, 567 A.2d 922, 923 (Me.1989); *Collins v. Fitzwater*, 277 Or. 401, 560 P.2d 1074, 1077–78 (1977), *overruled on other grounds, Lancaster v. Royal Ins. Co.*, 302 Or. 62, 726 P.2d 371 (1986); *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357, 359 (1988).

The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client. *Goodley,* 133 Cal.Rptr. at 87.

We agree with the *Goodley* court that allowing assignability would commercialize legal malpractice lawsuits. Additionally, we believe, as did the Indiana Supreme Court in *Picadilly,* that allowing assignment would impair attorneys' duties of loyalty and trust toward their clients. Attorneys would be put in the awkward position of, on the one hand, zealously protecting all of a client's rights and, on the other, being concerned a possible future claim of malpractice could be used to settle a client's case or debt to a stranger. The more zealous an attorney is in his representation, the more likely the client's adversary will be to strike back. Suing on an assigned claim would provide one such method of retaliation.

An equally compelling reason to reject assignment in this case is the particular concern expressed by the *Zuniga* court: assignments would be motivated by the plaintiff's inability to collect a judgment from an insolvent, uninsured, or financially-strapped defendant. In such an instance, the judgment-proof defendant has every motivation to look elsewhere for a source of funding. As stated by the *Zuniga* court:

> Should the law allow the plaintiff and the defendant to make a deal and focus on the defense lawyer? If assignments are permitted, the plaintiff will have the legal right to bargain for the defendant's right to sue his lawyer. When the defendant cannot make payment, why not offer to waive collection from him in return for assignment of his right to sue his lawyer? Defense attorneys would have to conduct their defense with the knowledge that the plaintiff might make exactly this kind of offer. Defense counsel would realize that zealous advocacy might prompt opposing counsel to retaliate with the newest weapon in his arsenal: the offer to settle in return for the client's malpractice action.

*Zuniga,* 878 S.W.2d at 317. Ultimately, lawyers would have every reason to be reluctant to represent defendants with inadequate insurance and limited assets.

Although Garland was not a complete "stranger" to appellees, we nevertheless believe the concerns expressed above apply equally to the instant case. Garland initiated a lengthy and costly disqualification proceeding. Its opponents, Rowlett and Sachse, fought to keep appellees as their counsel in the suit. Those cities controlled the choice of who would represent them and could have, at any time, replaced appellees with different counsel. Those cities did not. Those cities took the matter to a ten-day hearing. Ultimately, the trial court disqualified appellees, and nine months later, the cities settled the case. However, the settlement did not address the huge amount of attorney's fees expended in the disqualification battle; instead, Rowlett and Sachse assigned to Garland any causes of action against appellees for not immediately withdrawing. As assignee of those claims, Garland seeks to recover as damages the attorneys' fees and expenses incurred by Rowlett and Sachse. Thus, it appears the fear expressed in *Picadilly* has become a reality in this case. *See Picadilly,* 582 N.E.2d at 343 ("If assignments were permitted, we suspect that they would become an important bargaining chip for clients without a deep pocket.") Such an abrupt switch in position by the client should not be countenanced, much less promoted.

Nevertheless, Garland argues this Court "should not allow the concept of the attorney-

client relationship to be used as a shield to protect an attorney from the consequences of his malpractice." Barring assignability would not lead to such a result. Our holding does not bar the client from instituting a malpractice action against his or her attorney; it merely prevents the client from assigning such a claim to his adversary in the underlying litigation. Likewise, we decline Garland's invitation to carve out an exception allowing only governmental entities to sue on assigned claims.

Assignment should be permitted or prohibited based on the effect it will likely have on modern society and the legal system in particular. The policy considerations noted above persuade us that allowing assignability would debase the legal system and imperil the attorney-client relationship. Accordingly, we hold the assignment of a malpractice claim by a client to his adversary in the underlying litigation is invalid. We overrule the first point of error.

### B. Breach of Contract/Restitution & DTPA Violations

■ In the second point of error, Garland maintains the trial court improperly granted summary judgment on the assigned claims of breach of contract/restitution, breach of express warranty, and unconscionability because these claims were added after appellees filed their motion for summary judgment and appellees did not amend their motion to include these claims. Thus, Garland argues these causes of action were not before the trial court when it ruled on the summary-judgment motion.

Appellees argue that because they generally asserted malpractice claims are not assignable, their ground would extend to any assigned claims added after the motion for summary judgment was filed. We disagree. Granting a motion for summary judgment on causes of action not addressed in the motion is reversible error. *See Mafrige v. Ross*, 866

S.W.2d 590, 591 (Tex.1993). We therefore sustain the second point of error. Accordingly, we reverse the summary judgment as it pertains to the assigned claims of breach of contract/restitution, breach of express warranty, and unconscionability and remand these causes to the trial court.

### DIRECT CLAIMS

#### A. Negligence

■ In the fourth point of error, Garland claims fact issues exist precluding summary judgment on its direct claim for negligence. Garland alleged appellees were negligent in: (i) representing Sachse and Rowlett without obtaining Garland's consent; (ii) failing to withdraw as counsel once Garland objected; (iii) failing to withdraw as counsel once the trial court entered an order of disqualification; (iv) failing to withdraw as counsel once this Court and the supreme court denied Sachse and Rowlett's requests for mandamus relief; and (v) purporting to disclose and disclosing confidential information.

Thus, Garland's claim is grounded on appellees' failure to withdraw as Rowlett and Sachse's counsel from the outset. As damages, Garland claims the amount of attorneys' fees incurred to disqualify appellees, $675,000.[4] In their motion for summary judgment, appellees argued, among other theories, that Garland's claim was barred as a matter of law because no Texas statute or case recognizes a right to recover attorneys' fees and costs for disqualifying an opponent's attorney.[5] We agree.

■ In Texas, attorneys' fees expended in prior litigation with third parties are not recoverable as damages: attorneys' fees are only recoverable when provided for by statute or by agreement between the parties. *See Peterson v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 541 (Tex.App.—Dallas 1991, no writ) (customer could not recover from

---

4. Garland also claims it is entitled to damages because it was prevented from entering meaningful settlement negotiations during the time of the disqualification dispute. We construe this as a claim for attorneys' fees.

5. Appellees also challenged Garland's negligence cause of action on grounds of due process, lack of privity, res judicata, and collateral estoppel. Because we dispose of this cause of action on the attorneys' fee argument, we need not address the remaining grounds. *See Rogers*, 772 S.W.2d at 79.

broker attorneys' fees incurred in defending third party's suit); *Cupples Coiled Pipe, Inc. v. Esco Supply Co.,* 591 S.W.2d 615, 619 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r.e.) (attorneys' fees from prior tort or contract suits against third parties are not recoverable as damages in subsequent suits); *Buck v. Johnson,* 495 S.W.2d 291, 297 (Tex. Civ.App.—Waco 1973, writ ref'd n.r.e.) (trial court's assessment of third-party cross-defendants' attorneys' fees as damages was error). In this case, there is no statute or agreement between the parties authorizing the recovery of attorneys' fees incurred in disqualifying Rowlett and Sachse's attorneys. Because Garland's damage element of its malpractice claim fails as a matter of law, the trial court did not err in granting summary judgment on this claim.[6] *See Peterson,* 805 S.W.2d at 549. Accordingly, we overrule the fourth point of error.

### B. Breach of Fiduciary Duty/Unconscionability

■ In the third and fifth points of error, Garland asserts summary judgment was improper on the claims for breach of fiduciary duty and unconscionability because fact issues exist. Garland alleges appellees breached their fiduciary duty by representing Sachse and Rowlett when appellees had confidential information, gained in prior representation, which could be used against Garland in the sewer-contract litigation. Garland alleges appellees purported to reveal and did reveal those confidences. Such conduct, Garland asserts, is unconscionable and a violation of the DTPA. Appellees moved for summary judgment on the ground they had no confidential information relevant to the sewer contracts.[7]

On appeal, Garland maintains fact issues exist on whether appellees obtained confidential information and then later disclosed those confidences. Garland acknowledges

that disclosure of such confidences is an essential element of these claims. Thus, our initial inquiry is whether there is evidence that appellees had any confidential information to disclose.

Appellees' summary-judgment evidence on this issue consisted of the affidavits of Frank Booth and Bernard D. (Skip) Newsom. Booth testified he had been an attorney with Booth & Newsom (or a predecessor or subsequent firm) since 1969. Robin Lloyd, a one-time partner in the firm, represented Garland from 1974 to 1977. Booth said he neither represented Garland nor assisted it in drafting or executing the contracts. Moreover, he said he has never discussed them with Lloyd. Booth said he obtained no confidential information from any source relevant to the contract dispute that could have been used to the advantage of Sachse and Rowlett. When Lloyd left the firm in 1984, all of Garland's files were transferred to Lloyd's new firm, and Booth & Newsom neither retained nor duplicated those files. No attorney with Booth's firm represented Garland after 1984. Booth testified his part in representing Sachse and Rowlett was limited to the disqualification proceeding and being a witness in that proceeding.

Newsom testified that he had been with Booth & Newsom (or a predecessor or subsequent firm) since 1978. Like Booth, he said he recalled no discussions with any attorneys at the firm concerning the 1977 sewer contracts. Newsom said he neither represented Garland nor drafted or executed the contracts. Newsom said he obtained no confidential information from any source relevant to the contract dispute. When the firm was hired to represent Sachse and Rowlett, Newsom said he arranged for firm members to be interviewed to determine their participation, if any, in the contracts. No existing members of the firm helped to develop the con-

---

6. Whether Garland could have recovered its attorneys' fees from Rowlett and Sachse in the underlying declaratory judgment action is not an issue before us. Rather, the question is whether Garland can recover its litigation expenses in the prior suit from a third party—in this case, its opponents' attorneys.

7. Appellees also argued that there was no DTPA violation because (i) the complaints do not arise from services sought or purchased in connection with the challenged conduct and (ii) asking a court to decide the disqualification issue cannot, as a matter of law, constitute unconscionable conduct.

tracts and none had confidential information about the contracts.

 We conclude this evidence conclusively established appellees had no confidential information relative to the sewer contracts. Thus, the burden shifted to Garland to present controverting evidence to raise a fact issue. On appeal, Garland relies on a legal presumption in a disqualification proceeding to create a fact issue in this lawsuit. Specifically, Garland argues that because the trial court in the underlying litigation found a substantial relationship existed, Garland is entitled to presume in the instant suit that confidences were shared. *See NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex.1989) (orig. proceeding) (in disqualification hearing, once trial court determines substantial relationship exists, moving party entitled to conclusive presumption that confidences and secrets were imparted to former attorney). We cannot agree with Garland on this point. The instant suit is not a disqualification proceeding; it is a malpractice action. We will not substitute a conclusive presumption, which exists for disqualification purposes, for real evidence in a malpractice lawsuit. Accordingly, because the presumption does not apply, it cannot raise a fact issue on disclosure of confidences.

In its reply brief, Garland additionally asserts fact issues were raised by: (i) a memorandum prepared by Booth & Newsom researching the law on disqualification; (ii) Garland's motion to disqualify; and (iii) documents concerning Newsom's contacts with former Garland City Attorney Pete Eckert, who withdrew from representing Rowlett and Sachse because of a conflict of interest. Our review of this evidence shows nothing to raise a fact issue on whether appellees had confidential information on the sewer contracts. Accordingly, we overrule the third and fifth points of error.

In the sixth point of error, Garland raises a general complaint that summary judgment was improper because fact issues exist. Our disposition of the previous points of error disposes of this complaint. Accordingly, we overrule the sixth point of error.

In conclusion, we hold legal malpractice claims are not assignable in Texas and affirm summary judgment as to the assigned claims of negligence and breach of fiduciary duty. Additionally, we affirm summary judgment on Garland's direct claims. As to the assigned claims of breach of contract/restitution, breach of express warranty, and unconscionability, we reverse summary judgment and remand to the trial court.