**Michael A. McLAUGHLIN, Trustee, Appellant,**

v.

**Aubrey Dickson MARTIN, Jr., et al., Appellees.**

No. 14–95–00755–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 30, 1997.

---

Michael A. McLaughlin, Kyle R. Sears, Houston, for appellant.

Billy Shepherd, Norman T. Reynolds, Sam W. Cruse, Jr., John David Vogel, for appellees.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

HUDSON, Justice.

This is an appeal from a summary judgment disposing of a legal malpractice claim. In a single point of error, appellant contends the trial court erred in granting the motion for summary judgment. We affirm the judgment of the trial court.

In 1985, the appellant, Michael A. McLaughlin, purchased two tracts of land, totaling some 9 acres, from Cinco Venture. The promissory notes and deeds of trust covering these properties were later transferred to American General Realty Investment Corporation. In 1989, after McLaughlin had allegedly defaulted on the notes, American General retained the appellee, Aubrey Dickson Martin, Jr., to initiate and pur-

sue foreclosure proceedings against McLaughlin's property.[1] The deed of trust liens were foreclosed and the property was sold at a foreclosure sale in 1990.

On July 27, 1990, McLaughlin sued American General and Martin for breach of contract, breach of fiduciary duty, fraud, usury, conspiracy, and wrongful foreclosure. Martin was non-suited on the day of trial, and McLaughlin's suit against American General ended in a mistrial. The trial court later granted a partial summary judgment on the foreclosure claims in favor of American General. The parties settled the remaining issues in mediation. As part of the settlement, American General assigned McLaughlin any legal malpractice claims it might have against Martin.

In May of 1994, McLaughlin sued Martin on the assigned cause of action for alleged failures and omissions in his legal representation of American General. Martin moved for summary judgment on two grounds: (1) that American General's assignment of the legal malpractice claim was invalid; and (2) that collateral estoppel bars the claim. The trial court granted Martin's motion.

In his sole point of error, McLaughlin complains the trial court erred in granting Martin's motion for summary judgment. To prevail on a motion for summary judgment, the movant must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). When, as here, the summary judgment order does not specify the ground or grounds on which it is based, we will uphold the order on any ground asserted by the movant that is meritorious. *Rogers v. Ricane Enters. Inc.*, 772 S.W.2d 76, 79 (Tex. 1989).

McLaughlin argues that the trial court erred in granting summary judgment based on precedent shaped largely by public policy concerns. *See Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 316–18 (Tex.App.— San Antonio 1994, writ ref'd). In *Zuniga*,

---

1. Appellees Aubrey Dickson Martin, Jr.; Aubrey Dickson Martin, Jr., P.C.; Reynolds, Martin & Davis; J. Mark Davis, P.C.; Martin & Davis; and Norman T. Reynolds, P.C. shall be collectively referred to as "Martin."

the San Antonio Court of Appeals found that the integrity of the legal profession and the attorney-client relationship would be severely undermined by recognizing the assignability of legal malpractice claims. *Id.* at 318. The court reasoned that if a "judgment-proof" defendant could assign to the plaintiff a malpractice claim against his own lawyer, the plaintiff might be tempted to replace the under-capitalized defendant with a more solvent target—the defendant's attorney. *Id.* at 317–18. We agree.

The assignability of a legal malpractice claim would convert it into a commodity to be exploited and transferred to economic bidders to whom the attorney never owed a legal duty. *Zuniga,* 878 S.W.2d at 316 n. 4. This could result in an embarrassing reversal of positions where a successful plaintiff might argue that the defendant suffered judgment not because of the strength of plaintiff's claims, but because of defense counsel's negligence. *Id.* at 317; *see also State Farm Fire & Casualty Co. v. Gandy,* 925 S.W.2d 696, 708 (Tex.1996). This possibility would inevitably impair an attorney's duty of loyalty and trust to his client. Attorneys would be placed in the awkward position of, on one hand, zealously protecting all of his client's rights and, on the other, facing concerns that his client might consider assigning a malpractice claim against him to settle the case or satisfy a debt to a third party. *City of Garland v. Booth,* 895 S.W.2d 766, 770 (Tex. App.—Dallas 1995, writ denied). The assignability of malpractice claims could eventually make lawyers reluctant to represent underinsured or insolvent clients for fear of becoming the most attractive target in the lawsuit. *Zuniga,* 878 S.W.2d at 317–18.

McLaughlin attempts to distinguish this case from *Zuniga* and *State Farm* because he has not engaged in an "abrupt and shameless shift of positions," but has remained constant in his posture regarding Martin. *See State Farm,* 925 S.W.2d at 708. Initially, the *Zuniga* and *State Farm* plaintiffs strongly advocated the merits of their own cases. Following assignment of defendants' malpractice claims, however, plaintiffs took the contradictory position that defendants would have prevailed but for the negligence of defense counsel. Here, however, appellant depicts Martin as a participant in the underlying transaction. He was a named co-defendant from the outset, and McLaughlin contends it was Martin's alleged misconduct and malpractice that resulted in American General's foreclosure on appellant's property.

Despite appellant's arguments to the contrary,[2] we find the policy considerations raised in *Zuniga* and *City of Garland* justify barring the assignment here. *Zuniga* warned of the commercial aspect of the assignability of legal malpractice claims, describing it as "rife with probabilities that could only debase the legal profession." *Zuniga,* 878 S.W.2d at 316 n. 4 (quoting *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87 (1976)). The result envisioned was a lucrative business of factoring malpractice claims that would encourage unjustified lawsuits against members of the bar, generate an increase in malpractice litigation, promote champerty, and force attorneys to defend themselves against strangers. *Id.* Despite appellant's criticism that this conclusion is an irrational musing and pure speculation unsupported by the facts, it is not this Court's place to ignore principles of law tacitly approved by our state's Supreme Court.[3]

Finally, we believe that regardless of a client's resources and despite the absence of

2. Appellant makes the acerbic observation that it is not the assignment of malpractice claims that embarrass and demean the legal profession, but the "knee jerk legal analysis" and "poorly reasoned legal opinions" of the courts. More particularly, he claims *Zuniga* is an embarrassment to the legal profession because it fosters special treatment for lawyers, and he laments that the Fifth Court of Appeals in *City of Garland* has plunged "lemming-like" into *Zuniga's* "sea of unsound, unsupported and unsupportable reasoning."

3. The application for writ of error in the *Zuniga* case was refused by the Texas Supreme Court. *See* Tex.R.App. P. 133(a) (stating that "where the judgment of the court of appeals is correct and where the principles of law declared in the opinion of the court are correctly determined, the Supreme Court will refuse the application with the docket notation 'Refused.' ").

any perceived fraud or collusion, the mere threat of malpractice claim marketing will always loom large in the mind of any attorney. We agree with our sister courts that the potential assignment of a legal malpractice claim would be detrimental to an attorney's duty of loyalty and confidentiality to his clients. *See Zuniga,* 878 S.W.2d at 317; *City of Garland,* 895 S.W.2d at 770.

The Supreme Court of Indiana fully addressed the complications arising when a client attempts to assign his malpractice claim. *Picadilly, Inc. v. Raikos,* 582 N.E.2d 338 (Ind.1991). The creation of the attorney-client relationship places a multitude of duties upon the lawyer, and an attorney who violates these duties may face both disciplinary action and a malpractice claim. *Id.* at 342. The court said that the assignment of legal malpractice claims would weaken two of the principal standards that define a lawyer's duty to his client—the duty to act loyally and the duty to maintain client confidentiality. *Id.*

The assignment of a malpractice claim is perhaps most incompatible with an attorney's duty of loyalty. An attorney's loyalty to his client is likely to be compromised if he knows the client can sell a potential malpractice claim to his adversary. If an adversary can strike back at a zealous lawyer by buying up a client's malpractice action, attorneys may begin to rethink the wisdom of zealous advocacy. Lawyers would quickly realize that the interests of their clients could be incompatible with their own self-interest. *Id.* at 343.

Here, American General retained Martin to pursue its interests in foreclosure proceedings against the appellant. Martin was duty-bound to provide zealous advocacy to his client and indeed successfully foreclosed on the appellant's property. *See* TEX. DISCIPLINARY R. PROF. CONDUCT preamble ¶ 3 (1989). Appellant now alleges that Martin overstepped the bounds of zealous advocacy and that his representation of American General constituted malpractice. Had Martin foreseen that his client's adversary would be suing him for actions taken during his representation of American General, it seems unlikely he would have been able to fulfil his duty of uncompromising loyalty to his client.

Whenever a client sues a lawyer, the lawyer is permitted to reveal confidential client information reasonably necessary to establish a defense. TEX. DISCIPLINARY R. PROF. CONDUCT 1.05(c)(5). While the client retains control over the suit, the scope of the disclosure can be limited by the client's power to drop the claim. Once the client assigns the claim to another party, however, the client's control over the litigation is lost, but the attorney's right to defend himself by revealing confidential client information survives. The client is relegated to the sidelines as the assignee pursues the lawyer. If the attorney responds by revealing information that the client would have preferred remain confidential, the client cannot prevent this disclosure. Short-sighted clients may be blind-sided by this possibility, and farsighted clients may be encouraged to withhold information from their attorneys to reserve their ability to assign a malpractice claim without fear of a subsequent embarrassing disclosure. *Picadilly,* 582 N.E.2d at 343.

Appellant next argues that the holding in *Zuniga* should be limited strictly to the issue considered, "whether a client may assign his cause of action for legal malpractice *arising out of litigation.*" *Zuniga,* 878 S.W.2d at 314 (emphasis added). Appellant maintains that foreclosure proceedings do not constitute litigation and thus *Zuniga* should not apply. Litigation is defined as:

A lawsuit. Legal action, including all proceedings therein. Contest in a court of law for the purpose of enforcing a right or seeking a remedy. A judicial contest, a judicial controversy, a suit at law.

BLACK'S LAW DICTIONARY 934 (1990). While a foreclosure action is certainly a proceeding to enforce a right or seek a remedy, it is unclear whether the procedures outlined in the Texas Property Code make such action a judicial controversy or suit at law. *See* TEX. PROP.CODE ANN. § 51.002 (Vernon 1995).

We need not decide this issue, however, for we believe the policy considerations voiced in *Zuniga* apply equally to legal malpractice claims that arise out of litigation and those that do not. Moreover, a number of the cases cited as authority by *Zuniga* involved

situations outside the realm of litigation. *See, e.g., Roberts v. Holland & Hart,* 857 P.2d 492 (Colo.Ct.App.1993); *Wagener v. Mc-Donald,* 509 N.W.2d 188 (Minn.Ct.App. 1993).[4]

Appellant's final argument is that the partial summary judgment awarded to American General in the underlying case does not preclude him from bringing this malpractice claim. Because the invalidity of the assignment constitutes sufficient grounds for the disposition of this appeal, we need not address the collateral estoppel issue. *See Rogers,* 772 S.W.2d at 79.

Finding the public policy considerations set forth in *Zuniga* persuasive and applicable to the circumstances of this case, we overrule appellant's sole point of error. The judgment of the trial court is affirmed.

4. In *Roberts,* the client retained an attorney to handle the legal work necessary to his acquisition and development of several properties. The attorney, however, was negligent in drafting the legal description of the properties involved. Some time later, the development project failed. The client claimed that but for the error in the legal description, he would have obtained the financing necessary to complete the venture. The client assigned an interest in his malpractice claim to a third party and the two brought suit against the attorney. *Roberts,* 857 P.2d at 494–95. The Colorado Court of Appeals, relying on the same public policy factors employed in *Zuniga,* disallowed the assignment of the malpractice claim. *Id.* at 495.

In *Wagener,* the clients planned to sell a piece of real estate. The state had previously taken a highway easement on the land, and the clients retained an attorney to make title to their property "marketable." The attorney failed in this endeavor, and the purchaser of the land sued the clients for failing to deliver marketable title. As part of a settlement agreement, the clients assigned their malpractice claim against their former attorney to the purchaser. *Wagener,* 509 N.W.2d at 189. The Minnesota Court of Appeals, likewise relying on the policy considerations used in *Zuniga,* barred the assignment of the claim. *Id.* at 193.