**Mark W. BAKER, Appellant,**

v.

**John C. MALLIOS d/b/a Mallios & Associates, Mallios & Associates, P.C., and James D. Blume, Appellees.**

**No. 05–96–00112–CV.**

Court of Appeals of Texas, Dallas.

Feb. 26, 1998.

---

Darrell D. Minter, Vineyard, Martin & Minter, Christina Hoffmann-Givaudan, Davis & Harvey, P.C., Dallas, for Appellant.

George M. Kryder, III, Carrington, Coleman, Sloman & Blumenthal, Jennifer S. Stoddard, Jennifer Stoddard, Dallas, for Appellees.

Before LAGARDE, JAMES and MOSELEY, JJ.

## OPINION

LAGARDE, Justice.

Appellant Mark W. Baker sued appellees John C. Mallios d/b/a Mallios & Associates, Mallios & Associates P.C., and James D. Blume (hereafter "Mallios") for legal malpractice. The trial court granted Mallios summary judgment on the basis that Baker illegally assigned a portion of his claim to a third person. In a single point of error, Baker contends that the trial court erred in granting summary judgment. We agree.[1] We reverse the summary judgment and remand this matter to the trial court.

### Factual Background

The summary judgment record reflects that on March 4, 1990, Baker started drinking alcohol at approximately 3 p.m. at a softball game. After the softball game, he continued drinking, first at Stan's Blue Note and then at Mimi's Pub. After Baker left Mimi's Pub at approximately 2 a.m., Dallas police officers attempted to stop him, apparently for driving his motorcycle on the wrong side of the road. While trying to outrun the police officers, Baker lost control of his motorcycle and injured himself in a one-vehicle accident.

Baker retained Mallios to represent him in a personal injury lawsuit. On Baker's behalf, Mallios sued Shades Automotive Glass Tinters, Incorporated, whom he believed to be the owner of Mimi's Pub. The lawsuit alleged that the accident was the direct result of Mimi's Pub having violated a duty it owed Baker under both the Texas Alcoholic Beverage Code and the common law by selling and serving Baker alcohol when it was apparent Baker was intoxicated to the extent that he presented a clear danger to himself and others. When Shades Automotive did not answer the lawsuit, Baker took a default judgment against it for an amount in excess of one million dollars.

---

1. We address Baker's point of error in this published opinion. In an unpublished opinion, issued concurrently with this opinion, we also address Mallios's reply point arguing that the summary judgment was based on multiple grounds rather than the sole ground that legal malpractice claims are not assignable. *See* Tex. R.App. P. 47.4.

According to Mallios, Shades Automotive was judgment-proof and the default judgment was uncollectible. Baker, however, felt that Mallios was not trying hard enough to collect on the judgment. Baker responded to an advertisement T.G. Herron had placed in a local newspaper offering to buy judgments in excess of twenty-five thousand dollars. Herron investigated the matter and concluded that Mallios sued the wrong party because Shades Automotive was not the owner of Mimi's Pub.[2] Because the statute of limitations had run, Baker could not pursue his personal injury claim further. Baker, Herron, and attorney Darrell D. Minter entered into a series of contracts, more fully described below, that basically provided that Minter would represent Baker in a malpractice action against Mallios. The lawsuit was to be financed by Herron in exchange for an assignment of fifty percent of any proceeds recovered by Baker.

On Baker's behalf, Minter filed this malpractice action against Mallios. Mallios moved for summary judgment, asserting he was entitled to judgment as a matter of law, because the agreement between Herron and Baker was an assignment of a legal malpractice claim which is not assignable under Texas law.

## Standard of Review

The function of a summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). Appellate courts review summary judgments under the well-established standards set forth in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985):

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a material disputed fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

To prevail on a summary judgment, a defendant as movant must either (1) disprove at least one element of each of the plaintiff's theories of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

## Assignment of Legal Malpractice Claims

■ The general rule in Texas is that causes of action are assignable. *See* TEX. PROP.CODE ANN. § 12.014 (Vernon 1984). Legal malpractice claims, however, are not assignable. The San Antonio Court of Appeals established this exception to the general rule in *Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313, 318 (Tex.App.—San Antonio 1994, writ ref'd). The Texas Supreme Court, by adding the notation "writ refused" to *Zuniga,* declared that the court of appeals' judgment was correct and the principles of law set forth in the opinion were correctly determined. *See* TEX.R.APP. P. 56.1(c). Thus, *Zuniga* has the same precedential value as an opinion of the supreme court. TEX. R.APP. P. 56.1(c); *see also San Diego I.S.D. v. Central Educ. Agency,* 704 S.W.2d 912, 915 (Tex.App.—Austin 1986, writ ref'd n.r.e.).

**2.** The record is not clear on whether Baker was also alleging negligence for failure to bring suit against additional parties such as Stan's Blue Note.

This Court followed *Zuniga* in *City of Garland v. Booth,* 895 S.W.2d 766, 769 (Tex. App.—Dallas 1995, writ denied). In doing so, this Court specifically agreed with the reasoning in *Zuniga. See Booth,* 895 S.W.2d at 769. Thus, we review the summary judgment record in this case to determine whether Mallios proved as a matter of law that the series of contracts among Herron, Baker, and Minter amounted to an assignment of a legal malpractice claim prohibited by *Zuniga.* To address this issue, we will examine the *Zuniga* holding and the contracts at issue, then apply the law set forth in *Zuniga* to the facts in this case.

### Zuniga v. Groce, Locke & Hebdon

The Zunigas brought a personal injury suit against Bauer Manufacturing Company and other defendants. *Zuniga,* 878 S.W.2d at 314. Bauer's insurer became insolvent, and Bauer feared that a large judgment would drive it into bankruptcy. *Id.* Bauer therefore agreed to a twenty-five million dollar settlement in which it assigned its malpractice claim against its attorneys to the Zunigas. *Id.* Bauer transferred all of its assets except the legal malpractice claim against its attorneys to a new corporation. The parties agreed that the transfer was not fraudulent, and the Zunigas waived their rights to the new entity's assets. *Id.* The Zunigas then sued Bauer's attorneys. *Id.* In affirming the dismissal of the Zunigas' suit against the attorneys, the San Antonio Court of Appeals held that an assignment of a legal malpractice claim arising from litigation is invalid. *Id.* at 318.

In disallowing the assignment, the court relied on policy considerations set forth in *Goodley v. Wank & Wank, Inc.,* 62 Cal. App.3d 389, 133 Cal.Rptr. 83 (1976) and other cases, including the following:

1. a market in malpractice claims may demean the legal profession;

2. a risk of collusion exists between the assignor and assignee;

3. assignability of legal malpractice claims may deter attorneys from zealous advocacy on behalf of their clients;

4. an assignment may cause legal services to be less available, especially to clients with inadequate insurance or assets; and

5. an illogical reversal of roles is inherent in allowing a party to sue the adverse party's attorney.

*Zuniga,* 878 S.W.2d at 317–18; *see also Booth,* 895 S.W.2d at 769–70.

### Baker, Herron, Minter Contracts

There are three contracts or agreements at issue in this case. The first is between Baker and Herron. This contract is labeled "Agreement." Baker is denominated as the assignor and Herron as the assignee. The agreement states, among other things, that:

1. Baker desires to pursue claims against Mallios but is without the necessary resources;

2. Baker "needs assistance in the form of coordination of the various matters" relating to the claim;

3. Herron agrees to provide the financial assistance and assist in coordination of issues;

4. In consideration of his services, Herron will receive fifty percent of any net recovery from the lawsuit against Mallios;

5. Herron shall be reimbursed for his expenses from Baker's share of any recovery;

6. Herron can recommend an attorney to Baker and negotiate the terms and conditions of the employment contract with the attorney; and

7. Baker and Herron agree that no settlement of the claims shall be entered into without the consent of the other, which consent will not be unreasonably withheld.

The second contract is an attorney's fee contract between Baker and Minter. That contract provides that Baker retains Minter to represent him in a malpractice action against Mallios and Baker agrees to pay

Minter the hourly rate set forth in the contract and reimburse his costs and expenses.

The third contract is a "guaranty agreement and compensation contract" entered into by Baker, as client, Minter, as attorney, and Herron, as guarantor. In this agreement, Herron absolutely and unconditionally guarantees payment of the attorney's fee contract. In exchange, Minter agrees to accept a "reduced hourly rate set forth in the contract in consideration for the payment of the contingency fee by [Herron] in the amount of 10% of all net recovery paid to [Herron] pursuant to the terms of the Agreement [between Herron and Baker]." Mallios interprets this contract as requiring Minter to waive the hourly rate set forth in the attorney's fee agreement and instead accept as his attorney's fee ten percent of Herron's recovery. For purposes of this opinion, we accept Mallios's interpretation of the guaranty contract.

### Application of Zuniga to Facts of This Case

We now examine the contracts at issue in this case in light of the policy considerations set forth in Zuniga and adopted by this Court in Booth. We examine the policy considerations in an order that is different from the order in Zuniga.

#### 1. Role Reversal

The most striking difference between this case and Zuniga is that there is not "an illogical reversal of roles." See Zuniga, 878 S.W.2d at 318. The Zunigas sued their former adversary's attorneys. In their underlying case, the Zunigas argued they had a valid tort claim against the defendant and that they would win the case on the merits. In their legal malpractice case, as assignees of their former adversary's cause of action, the Zunigas took the opposite position that is, they would have lost their case and their adversary would have won, but for the defense attorney's malpractice. The Zuniga court characterized the role reversal inherent in assigning a malpractice case to an adver-

sary as "demeaning." Id. By contrast, Baker sued his own, as opposed to his adversary's, attorneys. To plead a cause of action against his attorneys, Baker must maintain a position consistent with his position in the underlying case—that his underlying dram shop case had merit and he would have prevailed but for his attorney's malpractice. Thus, there is no "demeaning" role reversal as in Zuniga. Other Texas cases addressing the assignment of legal malpractice claims also involved role reversals. See, e.g., Booth, 895 S.W.2d at 767–68; Vinson & Elkins v. Moran, 946 S.W.2d 381, 389–90 (Tex.App.—Houston [14th Dist.] 1997, writ requested); Izen v. Nichols, 944 S.W.2d 683, 684 (Tex.App.—Houston [14th Dist.] 1997, no writ); McLaughlin v. Martin, 940 S.W.2d 261, 262–63 (Tex.App.—Houston [14th Dist.] 1997, no writ). For example, in Booth, the City of Garland entered into contracts with the cities of Rowlett and Sachse to treat waste water. A dispute arose and litigation ensued. After the litigation was settled, Rowlett and Sachse assigned any malpractice claim they may have had against their lawyers to Garland. This Court held the assignment invalid. Booth, 895 S.W.2d at 771.

#### 2. Availability of Legal Services

The court in Zuniga noted that assignment of legal malpractice claims may cause legal services to be less available, especially to clients with inadequate insurance or other assets. Zuniga, 878 S.W.2d at 318. The argument, grounded on public policy concerns, is that the threat of assignment may cause lawyers to be less willing to represent insolvent defendants because the only way a plaintiff can recover in that situation is to sue the defense lawyer as the defendant's assignee. This policy consideration is inapplicable in instances, like this one, when there is no role-reversal that is, when an unsuccessful plaintiff assigns his cause of action against his previous attorney to a third party not involved in the underlying litigation.

### 3. Collusion

Another reason that the *Zuniga* court disallowed assignment was the risk of collusion. The court denounced the assignment in that case as a "transparent device to replace a judgment proof, uninsured defendant with a solvent defendant." *Id.* at 317. Mallios argues that is exactly what Baker is trying to do in this case. Collusion is a valid concern in a role-reversal case. For example, a defendant could settle a case for an inflated agreed judgment and then assign his malpractice claim to the plaintiff in exchange for the plaintiff's covenant not to execute against him. *See, e.g., Coffey v. Jefferson County Bd. of Educ.*, 756 S.W.2d 155, 157 (Ky.Ct. App.1988).

There is no role reversal here, however. Baker was the plaintiff in the underlying suit and now seeks to pursue claims against his attorneys in that case that are consistent with his position in the underlying suit. Second, Baker assigned a portion of his recovery to Herron—a stranger to the underlying case. Unlike the prevailing plaintiff in *Zuniga*, Herron had no means of engaging in unfair, collusive activity in conjunction with that case. Thus, we do not see the risk of improper collusive activity as a reason to prohibit an unsuccessful plaintiff from assigning his malpractice cause of action against his attorneys in the underlying action to a third party not involved in that action.

Moreover, Mallios's summary judgment motion asserted only potential collusion in the context of his public policy argument against assignment of malpractice claims. He does not contend Baker and Herron illegally colluded concerning the underlying case, nor does he present summary judgment evidence supporting such a claim.[3]

### 4. Zealous Advocacy

The court in *Zuniga* also expressed concern that assignability of malpractice claims may deter zealous advocacy. If a lawyer represents an insolvent defendant, he may not want to engage in hardball tactics for fear of alienating the plaintiff and thus encouraging the plaintiff to take an assignment from the defendant and sue defense counsel. We see no relevance between this policy concern and an assignment to a party not involved in the underlying suit. Certainly Mallios is not arguing that he was deterred from zealously representing Baker because of the threat of an assignment.

### 5. Marketplace

*Zuniga* also warned that the assignment of malpractice claims may demean the legal profession by creating a market for malpractice claims. *Zuniga*, 878 S.W.2d at 317. In *Zuniga*, Bauer assigned its entire claim to the Zunigas, and it retained no role in the litigation between the Zunigas, as assignees, and Bauer's former attorneys. *Zuniga*, 878 S.W.2d at 314.

By contrast, Baker did not assign his claim to Herron. Instead, to secure financing to pursue his claim, Baker assigned to Herron a portion of any proceeds he may recover from Mallios. Baker, unlike the Zunigas, retains ownership of his claim and maintains an interest in the litigation.

A roughly analogous situation occurs when accident victims assign proceeds of a personal injury claim to the hospital where they were treated. Courts in other jurisdictions have upheld the validity of such assignments because they do not give the assignee control over the case:

> There is a distinction between the assignment of a claim for personal injury and the assignment of the proceeds of such a claim. The assignment of an injury claim gives

---

3. Indeed, there was no settlement agreement in the underlying case in which Herron, Baker, or anyone might have illegally colluded.

the assignee control of the claim and promotes champerty. Such a contract is against public policy and void. [citation omitted] *The assignment of proceeds of a claim does not give the assignee control of the case and there is no reason it should not be valid.*

*Charlotte–Mecklenburg Hosp. Auth. v. First Ga. Ins. Co.,* 340 N.C. 88, 455 S.E.2d 655, 657 (1995) (emphasis added); *see also, In re Musser,* 24 B.R. 913, 921–22 (W.D.Va.1982); *Hernandez v. Suburban Hosp. Assoc.,* 319 Md. 226, 572 A.2d 144, 148 (1990).

The issue of whether Baker has ceded control of the litigation to Herron is a matter that is not fully developed. Mallios argues that Herron controls the litigation. This control, according to Mallios, is manifested in the agreement between Herron and Baker which provides that "Baker and Herron agree that no settlement of the claims shall be entered into without the effective consent of the other, which consent will not be unreasonably withheld."

Baker disputes that he has ceded control of his claim to Herron. He argues that his agreement with Herron is a financing agreement and does not establish an attorney-client relationship. His contract with Minter establishes the attorney-client relationship, and that document does not give Herron veto power over any settlement. Thus, Baker argues that his relationship with Minter is the normal attorney-client relationship, and he retains all rights a client would normally have including the right to make decisions regarding settlement. According to Baker, if he were to enter into a settlement agreement without Herron's consent, at most, Herron may be able to assert a separate breach of contract action against him.

We resolve any ambiguity in favor of Baker, the non-movant. Accordingly, we conclude that Baker retained more than a *theoretical* ownership interest in his claim, he maintained *actual* ownership because he controls the litigation to the same extent that a client in a case not involving an assignment controls the litigation. Accordingly, we conclude that the assignment in this case does not implicate the "marketplace" concerns articulated in *Zuniga.*[4]

**Conclusion**

 We have not discussed all of the policy considerations outlined in *Zuniga, Booth,* and other cases prohibiting assignments of legal malpractice claims. *See* Tex. R.App. P. 47.1. However, we conclude that those cases raise legitimate public policy concerns against the assignment by *a losing defendant* of his malpractice claim against his attorney *to the winning plaintiff* in exchange for an agreement by the plaintiff not to execute on the judgment.[5] These public policy concerns do not support a prohibition against a *plaintiff* assigning to a third party a portion of any proceeds he recovers in his legal malpractice claim against his own attorney. Thus, based on the arguments and the record before us, we conclude the trial court erred in invalidating the assignment in this case. Accordingly, we sustain Baker's sole point of error. The summary judgment is reversed, and this case is remanded to the trial court for further proceedings.

4. Although not argued by the parties, we note that the Texas Disciplinary Rules of Professional Conduct prohibit a lawyer from accepting compensation from one other than the client unless there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship. *See* Tex. Disciplinary R. Prof. Conduct 1.08(e)(2) (1989) *reprinted in* Tex. Gov't Code Ann, tit. 2, subtit. G app. (Vernon Pamph.1998). As stated above, we resolve any ambiguity in favor of Baker, the non-movant.

5. For cases arising from litigation, such as the case at bar, the "demeaning role reversal" referred to in *Zuniga* will usually be between the former plaintiff and defendant. *Zuniga,* 878 S.W.2d at 318. We note, however, that a "demeaning" role reversal rendering an assignment illegal can occur in a matter that does not arise from litigation. *See, e.g., McLaughlin,* 940 S.W.2d at 264.