**CITY OF GARLAND, Texas, Appellant,**

v.

**Frank R. BOOTH, Attorney, Individually, Bernard D. "Skip" Newsom, Attorney, Individually, and Booth & Newsom, P.C., Appellees.**

No. 05–96–01088–CV.

Court of Appeals of Texas, Dallas.

April 13, 1998.

Charles M. Hinton, Jr., City Attorney, Jean Edward Shotts, City Garland Attorney's Office, Garland, Kenneth J. Lambert, Middleberg Riddle & Gianna, Dallas, for Appellant.

Beverly Ray Burlingame, Thompson & Knight, P.C., Dallas, for Appellee.

Before LAGARDE, WHITTINGTON and ROACH, JJ.

## OPINION

LAGARDE, Justice.

City of Garland, Texas, appeals the summary judgment in favor of Frank R. Booth, Bernard D. Newsom, and Booth & Newsom, P.C. In nine points of error, Garland asserts that the trial court erred in granting summary judgment (a) on the grounds that a client's claims against an attorney for breach of a legal services contract, restitution, breach of an express warranty under the DTPA, and unconscionable conduct under the DTPA are not assignable; and (b) because material fact issues remain on Garland's causes of action. We overrule Garland's points of error and affirm the trial court's judgment.

## BACKGROUND

The facts of this case were thoroughly set out in this Court's previous opinion on this case. *See City of Garland v. Booth,* 895 S.W.2d 766, 767–68 (Tex.App.—Dallas 1995, writ denied). The following is a brief summary of those facts.

Robert Lloyd was a partner in the predecessor firm to Booth & Newsom, P.C. (the firm). Between 1974 and 1977, Lloyd represented Garland, drafting Garland's wastewater contracts with the cities of Sachse and Rowlett. Booth was a partner in the firm during that time, but Newsom did not join the firm until 1978. In 1984, Lloyd left the firm taking all the files on the Garland wastewater contracts. By 1985, no attorney who had represented Garland remained at the firm. Neither Booth nor Newsom ever represented Garland on the contracts or received any confidential information regarding them.

In June 1988, Newsom was approached about the possibility of representing Sachse and Rowlett in a wastewater rate dispute with Garland. Newsom interviewed the firm's attorneys and learned that none of them had participated in developing Garland's wastewater contracts or had obtained any confidential information regarding the agreements. Newsom agreed to represent Sachse and Rowlett. After Garland threatened to seek disqualification of an attorney with another firm who had participated in the development of the contracts, Booth & Newsom became concerned that Garland might seek to disqualify it from representing Sachse and Rowlett. Therefore, the firm conducted extensive research on the disqualification issue.

Garland filed a motion to disqualify the firm based on conflict of interest. After discovery and a ten-day evidentiary hearing, the trial court granted Garland's motion to disqualify. The wastewater litigation then settled. As part of the consideration for the settlement, Rowlett and Sachse assigned to Garland any causes of action they had against the firm and its employees arising out of the litigation.

Based on the assignment of claims from Rowlett and Sachse, Garland sued the firm, Booth, and Newsom for legal malpractice and breach of fiduciary duty. Garland also brought a direct claim alleging appellees' negligence caused it to spend $675,000 to disqualify them. Appellees filed a motion for summary judgment. Garland responded and amended its petition to add assigned claims for breach of contract, restitution, breach of express warranty, and unconscionability. Appellees did not amend their motion for summary judgment to challenge these claims. The trial court granted appellees' motion for

summary judgment, granting appellees a take-nothing judgment. Garland appealed the judgment. This Court affirmed the summary judgment on the assigned claims for negligence and breach of fiduciary duty as well as Garland's direct claims. *Booth,* 895 S.W.2d at 771, 773. We reversed the summary judgment on the assigned claims for breach of contract, restitution, breach of express warranty, and unconscionability and remanded them for further proceedings because these claims were not included in appellees' motion for summary judgment. *Id.* at 771.

On remand, appellees moved for summary judgment on the remaining claims. The trial court granted appellees' motion for summary judgment and ordered that Garland take nothing from appellees. In the order, the trial court listed the claims before it and stated, "The Court concludes that legal malpractice claims are unassignable in Texas. The three assignee claims listed above are therefore barred as a matter of law." (Citations omitted.) Garland perfected an appeal from this judgment.

## STANDARD OF REVIEW

The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984); *Wilcox v. St. Mary's Univ.,* 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). A motion for summary judgment must "stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993).

When the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory pleaded. *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ.App.— Amarillo 1979, no writ). Thus, the defendant can prevail by conclusively establishing against the plaintiff at least one factual element of each theory pleaded by the plaintiff, *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970), or by conclusively establishing every factual element of an affirmative defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). Conversely, the plaintiff can bar summary judgment by presenting evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *Torres v. Western Casualty & Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970); *see also Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 680–81 (Tex.1982). Alternatively, the plaintiff can defeat the motion by conceding that the material facts are undisputed, but convincing the court that the defendant's legal position is unsound. *Estate of Devitt,* 758 S.W.2d 601, 602 (Tex.App.—Amarillo 1988, writ denied).

## ASSIGNMENT OF CLAIMS AGAINST AN ATTORNEY

■ Although assignments of causes of action are generally permissible, assignments of legal malpractice causes of action between the parties in the underlying litigation violate public policy. *See Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313, 318 (Tex.App.—San Antonio 1994, writ ref'd); *Baker v. Mallios,* 971 S.W.2d 581, 584, 588 (Tex.App.—Dallas

1998, no pet. h.); *Booth,* 895 S.W.2d at 771. The public policy concerns against assignment of legal malpractice causes of action between parties in the underlying litigation include the following:

1. a market in malpractice claims may demean the legal profession;

2. a risk of collusion exists between the assignor and assignee;

3. assignability of legal malpractice claims may deter attorneys from zealous advocacy on behalf of their clients;

4. an assignment may cause legal services to be less available, especially to clients with inadequate insurance or assets; and

5. an illogical reversal of roles is inherent in allowing a party to sue the adverse party's attorney.

*Baker,* at 585; *see also Zuniga,* 878 S.W.2d at 317–18; *Booth,* 895 S.W.2d at 769–70.

■ In its first point of error, Garland contends, "The trial court erred in holding that all claims against an attorney are unassignable 'legal malpractice' claims as a matter of law." The trial court did not so hold. The trial court stated in the order, "The Court concludes that legal malpractice claims are unassignable in Texas. The three assignee claims listed above are therefore barred as a matter of law." (Citations omitted.) Garland argues that its claims are not legal malpractice claims within the reasoning of *Zuniga,* and to hold that they are legal malpractice claims would mean any claim asserted against an attorney was a legal malpractice claim and therefore unassignable. We disagree. All claims against an attorney are not necessarily malpractice claims. Any claim unrelated to an attorney's representation of a client (e.g., suit against an attorney for nonpayment of the attorney's rent, suit on a note where the attorney is a maker or guarantor, a divorce action brought by the attorney's spouse, etc.) would not be classified as "legal malpractice" under *Zuniga.* Because the trial court did not declare all actions against an attorney to be claims for legal malpractice, we overrule Garland's first point of error.

■ In its second through fifth points of error, Garland contends that the trial court erred in holding that Garland's claims for breach of contract/restitution, breach of express warranty under the DTPA, and unconscionability under the DTPA are unassignable. Garland asserts that *Zuniga* and its progeny do not apply to these claims because they do not involve claims of legal malpractice. *Zuniga,* however, is not limited to claims of legal malpractice. That case was a legal malpractice case, but nothing in the opinion indicates that the holding is limited to traditional legal malpractice cases. The *Zuniga* court's holding barring assignment should apply to any claim having the public policy concerns present in *Zuniga.* Or, as we stated in *Baker,* a legal malpractice claim is assignable if it does not have the public policy concerns present in *Zuniga. See Baker,* at 588. Therefore, to determine whether assignment of the claims was barred by *Zuniga,* we must examine the claims to determine whether they raise *Zuniga*'s public policy concerns.

All of Garland's claims are based on appellees' failure to inform Sachse and Rowlett of the conflict of interest before agreeing to represent them. The "breach of contract/restitution" and the breach of express warranty claims rely on a written agreement in which appellees promised the cities, "We will additionally assist you in any other matter requested by [you], provided we do not have a conflict of interest." The "breach of contract/restitution" claim also asserts that appellees breached their contract with the cities by billing them for defending against Garland's motion to disqualify appellees because these charges were not reasonable and necessary for the wastewater litigation. In the unconscionability claim, Garland asserts appellees acted unconscionably by having "'grave concerns' about their ability to provide continued representation to Sachse and Rowlett" and not disclosing their "obvious conflict of interest and their imminent disqualification."

Although these claims may be more collateral to the underlying litigation than the

claims asserted in *Zuniga* and the claims ruled on in the first appeal of this case in *Booth,* these claims, like those in *Zuniga* and *Booth,* are based on the attorney-client relationship. Assignment of these claims to the opposing party in litigation creates the same public policy problems as assignment of traditional legal malpractice cases. The possibility that an attorney's billing practices, correspondence with the client or lack thereof, or strategic decision (such as to defend against a motion to disqualify) could be used as a bargaining chip in settlement negotiations could deter attorneys from zealous advocacy on behalf of their clients. As we noted in the earlier appeal of this case, "The more zealous an attorney is in his representation, the more likely the client's adversary will be to strike back. Suing on an assigned claim would provide one such method of retaliation." *Booth,* 895 S.W.2d at 770. Likewise, assignment to the opposing party of claims concerning the attorney-client relationship could cause legal services to be less available to clients with inadequate insurance and assets. *See Zuniga,* 878 S.W.2d at 317; *Baker,* at 585; *Booth,* 895 S.W.2d at 770. "In such an instance, the judgment-proof defendant has every motivation to look elsewhere for a source of funding.... Ultimately, lawyers would have every reason to be reluctant to represent defendants with inadequate insurance and limited assets." *Booth,* 895 S.W.2d at 770. In short, all of the public policy concerns expressed in the first appeal of this case apply equally to these claims. *See id.* at 770–71; *see also Vinson & Elkins v. Moran,* 946 S.W.2d 381, 396 (Tex.App.—Houston [14th Dist.] 1997, writ dism'd by agr.) (DTPA claims unassignable because of public policy concerns of *Zuniga* and its progeny).

We hold that the trial court did not err in determining that the assignment of these claims to Garland was barred as a matter of law. We overrule Garland's second through fifth points of error.

In its sixth through ninth points of error, Garland asserts that fact questions exist on its claims. Because we have determined that assignment of these claims to Garland was barred as a matter of law, we need not reach these points of error. *See* Tex.R.App. P. 47.1.

We affirm the trial court's judgment.