```
IN RE: §
 §
 § CASE NO.
 §
 DEBTOR. §
 §
_____ §
 §
 §
 PLAINTIFF, §
 §
VS. § ADVERSARY NO.
 §
 §
 §
 DEFENDANT. §
```

### CONSENT TO A JURY TRIAL BEFORE A U.S. BANKRUPTCY JUDGE

The parties to the above-captioned adversary proceeding consent to United States Bankruptcy Judge _____ conducting the jury trial in this proceeding. 28 U.S.C. §157(e). To the extent that this adversary proceeding involves non-core matters, the parties further consent to proceed under 28 U.S.C. §157(c)(2).

Party or counsel of record Date

_____ _____

_____ _____

_____ _____

### ORDER OF DISTRICT COURT

The United States District Court for the Northern District of Texas specially designates United States Bankruptcy Judge _____ to conduct the jury trial in the above-captioned adversary proceeding. 28 U.S.C. §157(e). Review shall be under 28 U.S.C. §158.

Date _____ _____
 United States District Judge

In re C–POWER PRODUCTS, INC., Debtor.

Newport Acquisition Co. No. 1, L.L.C.,

Crossroads Capital Partners, L.L.C., and C–Power Products, Plaintiffs,

v.

Richard B. Schiro, Defendant.

Bankruptcy No. 396–39068–SAF–11.
Adversary No. 398–3677.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Dec. 1, 1998.

John P. Lewis, Jr., Dallas, TX, for plaintiffs.

Brenda Cubbage, Butler & Binion, Dallas, TX, for defendant.

## *MEMORANDUM OPINION AND ORDER*

STEVEN A. FELSENTHAL, Bankruptcy Judge.

Richard B. Schiro, the defendant, moves the court to dismiss the complaint filed by Newport Acquisition Company No. 1, L.L.C., and Crossroads Capital Partners, L.L.C., but not C–Power Products, Inc., for lack of standing. Newport and Crossroads oppose the motion. The court conducted a hearing on the motion on November 5, 1998.

Schiro moves for dismissal pursuant to Rule 12(b)(6) of the Fed.R.Civ.P., made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

The court must determine, in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief. *Cinel v. Connick,* 15 F.3d 1338 (5th Cir.1994). A complaint may not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must accept as true all well-pleaded allegations contained in the plaintiff's complaint. *Albright v. Oliver,* 510 U.S. 266, 267–268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994). The facts pled must be specific, however, and not merely conclusory. *Guidry v. Bank of La Place,* 954 F.2d 278, 281 (5th Cir.1992).

Schiro served as the attorney for C–Power Products, Inc., the debtor, while a debtor in possession under Chapter 11 of the Bankruptcy Code. Crossroads purchased a claim against the bankruptcy estate of $95.27 to gain standing in the bankruptcy case. Crossroads, joined by the Official Committee of Unsecured Creditors, confirmed a plan of reorganization for C–Power Products. In the plan, Newport purchased certain assets of the debtor and assumed several liabilities, including the payment of the administrative expenses of the bankruptcy case.

In this adversary proceeding, the plaintiffs object to the application for compensation and reimbursement of expenses filed by Schiro under 11 U.S.C. § 330. In addition, they have brought claims for relief against Schiro for negligence, breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

In his motion, as clarified during the hearing, Schiro contends that Newport and Crossroads lack standing to object to his application for compensation and to prosecute the claims for relief against him. Schiro further contends that C–Power Products could not transfer the negligence claim to Newport as that amounts to an assignment of a legal malpractice claim not permitted in Texas.

### Malpractice

The plaintiffs' claim for negligence constitutes a legal malpractice claim against Schiro for actions he took as counsel for the debtor in possession. As such, the claim belongs to C–Power Products, the client. In the plan of reorganization, however, C–Power Products transferred to Newport "all other assets, . . . including, but not limited to, all causes of action of the Debtor, whether or not such action arose pre-Petition Date or pursuant to any right or action arising under or related to the Bankruptcy Code." Article 5.1.10. The plan deemed the transfer provisions to be a motion pursuant to 11 U.S.C. § 363(b) and (f) to sell property of the debtor free and clear of all liens, claims and encumbrances to Newport. Pursuant to the plan, C–Power Products executed a bill of sale and assignment of those "assets."

■ Under Texas law, a client may not assign a legal malpractice claim. In the attached memorandum opinion and order in *Jewel Recovery, L.P. vs. Skadden, Arps, Slate, Meagher & Flom (In re Zale Corp.),* adv. proc. 395–3599 (September 9, 1996), copy attached, the court reviews the Texas law in the context of a case under Chapter 11 of the Bankruptcy Code. The court held that an entity created pursuant to a plan of reorganization to litigate a debtor's claims, including legal malpractice, for the benefit of the bankruptcy estate, could prosecute the

claim. However, the court specifically held that the transfer to a plan-created litigation entity by operation of federal law did not involve the selling of claims to an economic bidder. Slip opinion at 6. This case confronts that issue.

Congress, under the Bankruptcy Code, may preempt state law. *See California v. ARC Am. Corp.,* 490 U.S. 93, 100, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). Pursuant to the express provisions of the plan, C–Power Products sold assets to Newport pursuant to § 363(b) and (f) of the Bankruptcy Code. Section 363(b) authorizes the trustee, here C–Power Products as the debtor in possession, 11 U.S.C. § 1107(a), after notice and hearing, to sell property of the bankruptcy estate. 11 U.S.C. § 363(b)(1). Section 363(f) authorizes the trustee, here C–Power Products as debtor in possession, to sell property under § 363(b) "free and clear of any interest in such property of an entity other than the estate, only if" one of five conditions is met. 11 U.S.C. § 363(f). Thus Congress has specifically legislated the extent to which a bankruptcy trustee, including a debtor in possession, may sell property of the bankruptcy estate. The court turns to an analysis of that legislation.

 Outside of a bankruptcy case, the client owns the legal malpractice claim and in Texas cannot assign the claim. Upon the commencement of a bankruptcy case, a pre-petition legal malpractice claim of the debtor becomes property of the bankruptcy estate. 11 U.S.C. § 541(a); *See Jewel Recovery v. Skadden Arps,* slip opinion at 8, attached. A post-petition legal malpractice claim, as alleged in the complaint, likewise becomes property of the bankruptcy estate. 11 U.S.C. § 541(a)(7). But, like pre-petition malpractice claims, it is a state law tort. The estate takes the property with the interests impressed by state law. *See Butner v. U.S.,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Haber Oil Co. v. Swinehart,* 12 F.3d 426, 435 (5th Cir.1994). Nonbankruptcy law determines the property interest. For a legal malpractice claim, the state law imposes a restriction on assignment on the owner of the claim.

 That restriction limits the ownership interest in the property. The restraint removes from the general ownership interest the right to transfer property. This amounts to an interest in the property. The client is the debtor, not the bankruptcy estate. For pre-petition malpractice claims, the debtor remains the client even if the claim becomes property of the estate. For post-petition malpractice, the trustee, here the debtor in possession, is the client who employs, with court approval, an attorney. 11 U.S.C. § 327(a). The attorney represents his client, here the debtor in possession. The client is the debtor or the debtor in possession, not the bankruptcy estate. The construction of the Bankruptcy Code is a holistic endeavor. *United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). Each provision of the Code must be read to give meaning to all provisions. Consequently, for purposes of § 363(f) a debtor-client with a legal malpractice claim must be considered an entity other than the bankruptcy estate. The restriction on assignment is an interest of an entity other than the estate. Thus, for a sale under § 363(f) free and clear of that anti-assignment restriction, one of the conditions of § 363(f)(1) through (5) must be met.

 By its very nature, nonbankruptcy law prohibits the assignment. Consequently, the sale cannot occur pursuant to § 363(f)(1).

Although ultimately C–Power Products withdrew its opposition to the Crossroads–Committee plan, C–Power Products had proposed its own plan. Indeed, until the confirmation hearing, the plan process was contested and adversarial. C–Power Products cannot be deemed to have consented to the transfer pursuant to § 363(f)(2). The court need not address in this case the situation of a sale under § 363 with the debtor/client's consent. But the court must accept the public policy of the Texas common law pursuant to Fifth Circuit precedent, *see Jewel Recovery v. Skadden Arps,* slip opinion at 7, attached, and thus finds the assessment in *In re J.E. Marion, Inc.,* 199 B.R. 635, 638–39 (Bankr.S.D.Tex.1996), instructive.

The non-assignability restriction is not a lien, making § 363(f)(3) not applicable. The

non-assignability restriction is not an interest subject to bona fide dispute, making § 363(f)(4) inapplicable. In a legal or equitable proceeding under the laws of the State of Texas the client C–Power Products could not be compelled to accept a money satisfaction from Newport for the non-assignability restriction, making § 363(f)(5) inapplicable. Rather, under Texas law, a legal or equitable proceeding could only compel C–Power Products to accept a money satisfaction for the legal malpractice claim itself without an assignment of the claim to a third person.

Congress has not, under § 363(f), broadly preempted the Texas law restricting the assignment of legal malpractice claims. Rather, the transfer under § 363(f) can only be taken if one of the criteria of that statute has been met. In this case, none of the criteria have been met. As the plan did not transfer the claim by operation of law to a representative of the bankruptcy estate other than the debtor, only C–Power Products may prosecute the claim. Because the sale to Newport had been conducted under § 363, the bill of sale and the plan must be construed in accordance with § 363. Under § 363(f), C–Power Products as a debtor in possession could not have transferred the legal malpractice claim to Newport. The motion to dismiss must accordingly be granted.

### Standing

Schiro contends that neither Newport nor Crossroads has standing to prosecute the fiduciary duty claims or an objection to the compensation application. Standing depends on "whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Matter of Pointer,* 952 F.2d 82, 85 (5th Cir.1992), quoting *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The test for standing includes elements mandated by Article III of the United States Constitution and non-constitutional prudential considerations. To satisfy Article III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. Even if he satisfies that constitutional test, the prudential principles imposed by the judiciary avoid deciding questions of broad social import where no individual rights would be vindicated and limit access to the federal courts to those litigants best suited to assert a particular claim. Congress may, however, expand standing to the full extent permitted by Article III, thereby permitting litigation by a plaintiff who would otherwise be barred by prudential standing rules. However, Congress may not abrogate the Article III requirement. *Pointer,* 952 F.2d at 85. "In order to assert constitutional standing, a plaintiff must therefore allege (1) a personal injury, (2) fairly traceable to the defendant's allegedly unlawful conduct, which is (3) likely to be redressed by the requested relief." 952 F.2d at 85.

In the Bankruptcy Code, Congress has expanded standing to the full extent permitted by Article III. For contested matters in a bankruptcy case, any party in interest may be heard, provided that party in interest has standing under Article III.

In this case, the claim held by Crossroads of $95.27 has been paid in full. Crossroads became a party in interest by purchasing the $95.27 claim. As a party in interest, Crossroads gained standing to file a plan of reorganization. 11 U.S.C. § 1121(c). The complaint alleges that Crossroads offered to purchase the assets of C–Power Products but that C–Power Products rejected the offer by allowing it to expire. Thereafter, Crossroads filed a proposed plan. The unsecured creditors committee joined Crossroads as a plan proponent. The court confirmed the Crossroads–Committee plan. The complaint further alleges that Newport, a wholly owned Crossroads' subsidiary, is the party responsible for payment of professional fees. Indeed, under the plan, Newport became the acquisition company or purchaser of C–Power Products' assets, responsible for payment of the administrative expenses of the bankruptcy case as allowed by the court and for the payment of the other consideration for the assets. The complaint alleges that the plaintiffs collectively have been damaged but they make the allegations only by conclusory pleadings. As Newport has assumed responsibility for payment of administrative ex-

penses and for the purchase price of the assets under the plan, and as Crossroads has been paid in full on its claim, Crossroads alleges no injury, let alone an injury that can be traceable to Schiro's conduct. Reading the complaint under the Rule 12(b)(6) standard of review, Crossroads can prove no set of facts that it has been injured by Schiro's alleged conduct. Crossroads lacks standing under the Article III standards to prosecute an objection to Schiro's compensation application or to prosecute a claim for breach of fiduciary duty or aiding and abetting a breach of fiduciary duty.

■ Under the Rule 12(b)(6) standard, however, the court cannot conclude that Newport can prove no set of facts that it has been injured by Schiro's alleged conduct. As the complaint recognizes, under the plan, as the acquisition company, Newport assumed liability for payment of administrative expenses, including Schiro's compensation and the unsecured creditors committee and its counsel's compensation. Newport thereby became a party in interest concerning the allowance of administrative expenses under 11 U.S.C. § 503(b). Newport has a right to request and be heard on the allowance of administrative expenses as a party in interest, 11 U.S.C. § 102(1), provided it meets the Article III standing requirement. Newport must pay the allowed administrative expenses. Schiro's application can only be allowed as an administrative expense to the extent found to be reasonable compensation by this court pursuant to 11 U.S.C. § 330(a). 11 U.S.C. §§ 330(a) and 503(b)(2). Newport alleges that Schiro's application does not establish reasonable compensation based on a number of allegations addressing work performed and eligibility for retention as counsel for the debtor in possession. The resolution of Schiro's application will have a direct and measurable impact on the amount of administrative expenses Newport must pay pursuant to the confirmed plan. Applying the Rule 12(b)(6) standard of review, the court cannot conclude that Newport can prove no set of facts that it has been injured by Schiro's alleged conduct which injury can be addressed by the disallowance of the application for compensation.

In addition, the court cannot conclude that Newport can prove no set of facts that if it establishes that Schiro either breached a fiduciary duty to the bankruptcy estate or aided and abetted in a breach of fiduciary duty by the debtor in possession, that Schiro thereby caused other administrative expenses, especially committee expenses incurred in the plan process, to be greater than otherwise necessary. If so, Newport would be injured because Newport has the contractual liability under the plan to pay those expenses.

Similarly, as the purchaser of assets, Newport assumed responsibility for the payment of the assets. The complaint alleges activities regarding the debtor's principal, C.F. Burley. Again assuming, as the court must on this motion, that Newport proves either a breach of fiduciary duty or aiding and abetting a breach of fiduciary duty, based on the Burley-related activities, the court cannot conclude that Newport can prove no set of facts that it had to pay the debtor or Burley an inappropriate or excessive amount for the assets. If so, then Newport would have been injured by Schiro's alleged actions. The injury can be addressed by damages on a breach of fiduciary duty or aiding and abetting a breach of fiduciary duty claim, if proved. Accordingly, Newport has standing to object to Schiro's application for compensation and to prosecute claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty.

### Orders

Based on the foregoing,

IT IS ORDERED that the motion to dismiss the claim of negligence, construed as a claim for legal malpractice, brought by Newport Acquisition Company No. 1, L.L.C., and Crossroads Capital Partners, L.L.C., is GRANTED and the claim as brought by those two plaintiffs is DISMISSED.

IT IS FURTHER ORDERED that the motion to dismiss the objection to the application for compensation and to the claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty brought by Crossroads Capital Partners, L.L.C., is GRANTED and the objection and the claims

as brought by that plaintiff are **DISMISSED.**

**IT IS FURTHER ORDERED** that the motion to dismiss the objection to the application for compensation and the claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty brought by Newport Acquisition Company No. 1, L.L.C., is **DENIED.**

### ORDER

Skadden, Arps, Meagher & Flom, the defendant, moves the court to dismiss the second amended complaint of Jewel Recovery, L.P., plaintiff, pursuant to Rules 12(b)(6) and 9(b) of the Fed.R.Civ.P., made applicable by Rules 7012(b) and 7009 of the Federal Rules of Bankruptcy Procedure. The court conducted a hearing on the motion on June 13, 1996.

A complaint may not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing a Rule 12(b)(6) motion, the court must construe a plaintiff's complaint in the light most favorable to the plaintiff. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992); *Collins v. City of Harker Heights,* 916 F.2d 284, 286 n. 2 (5th Cir.1990), *aff'd,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The court must accept as true all well-pleaded allegations contained in the plaintiff's complaint. *Albright v. Oliver,* 510 U.S. 266, 267–268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994). The facts pled must be specific, however, and not merely conclusory. *Guidry v. Bank of La Place,* 954 F.2d 278, 281 (5th Cir.1992).

Skadden moves to dismiss counts 1, 2, 3, 4, 5, 7, 8 and 9 asserted by Jewel in the second amended complaint, arguing that they sound in legal malpractice. Since Jewel was not Skadden's client, Skadden contends that the counts must be dismissed, relying on Texas common law holding that legal malpractice claims cannot be assigned. Jewel counters that even if Skadden correctly argues Texas law, federal bankruptcy law controls. The Bankruptcy Code automatically transfers claims from the pre-petition debtor to the bankruptcy estate, and then authorizes the bankruptcy court to transfer claims to litigation entities like Jewel.

One of the leading Texas cases on the assignability of a legal malpractice claim is *Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313 (Tex.App.—San Antonio 1994, writ ref'd). Treating the issue of assignability as an open question, the *Zuniga* court concluded that "legal malpractice claims arising out of litigation should not be assignable." *Id.* at 316. The court went on to state "[w]e appreciate the goals furthered by assignment, but conclude that they do not justify the detrimental impact that assignment would have on the legal system." *Id.* at 317.

Noting that most states prohibit the assignment of legal malpractice claims, the *Zuniga* court, after analyzing cases from other jurisdictions, concluded that:

> [T]o allow assignment would make lawyers reluctant—and perhaps unwilling—to represent defendants with inadequate insurance and assets. Such representation, after all, might make the lawyer the most attractive target in the lawsuit. Lawyers would soon realize that representing the low-asset defendant could bring an assigned malpractice suit after the plaintiff and defendant have made their peace. The pressure for assignment would be minimal when the defendant had adequate insurance or assets. But the underinsured, undercapitalized clients might discover that lawyers are less willing to represent them. By agreeing to represent an insolvent defendant, a lawyer could be putting his own assets and insurance within reach of a plaintiff who otherwise would have an uncollectable judgment.

*Id.* at 317–318.

Referring to what it called "the fountainhead case on this subject," *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal. Rptr. 83 (1976), the *Zuniga* court concluded that "[m]ost of the authorities disallowing assignment have reasoned that to allow assignability would make possible the commercial marketing of legal malpractice causes of action by strangers, which would demean the

legal profession." *Id.* at 316. The court included a lengthy footnote from the *Goodley* case detailing this marketplace policy concern.

The other significant Texas case to discuss the subject of assignability is *City of Garland v. Booth,* 895 S.W.2d 766 (Tex.App.—Dallas 1995, writ denied). Agreeing with the reasoning in *Zuniga,* the *Booth* court held that "legal malpractice claims are not assignable." *Id.* at 769. The *Booth* court then concluded, as well, that the policy considerations underlying the rejection by most states of the assignability of claims was best articulated by the California appellate court:

> [The *Goodley* ] court focused on the unique quality of legal services, the personal nature of the attorney's duty to the client, and the confidentiality of the attorney-client relationship. The court reasoned that to allow assignability of such claims would relegate the legal malpractice action to the marketplace and convert it to a commodity to be exploited and transferred to an economic bidder who may have no professional relationship with the attorney. *Id.*

The Fifth Circuit recently examined the issue of assignability in *Britton v. Seale,* 81 F.3d 602 (5th Cir.1996). The *Britton* court held invalid the assignment of a mother's malpractice claim to her daughter. The plaintiff argued that despite the breadth of the holdings in *Zuniga* (assignment of a legal malpractice action arising from litigation is invalid) and *Booth* (legal malpractice claims are not assignable), "Texas courts are concerned only with specific abuses—such as sale to strangers for profit and transfer by defendants in settlement of litigation—and not with assignment in general." *Id.* at 604. The court stated that while "correct in noting that the Texas cases discuss a variety of specific problems that would result from permitting assignment ... [the plaintiff] is wrong in concluding that they limit the ban on assignment to cases presenting those problems." *Id.* "*Zuniga* and *Booth* appear to prohibit assignment altogether in order to prevent such problems from occurring." *Id.* However, the court later remarked "[e]ven if the Texas Supreme Court were to limit its

ban on assignment of legal malpractice claims to those 'arising from litigation,' the instant situation would still fall within that ban." *Id.* Finally, the court concluded that "in Texas, most if not all claims of legal malpractice ... cannot be assigned." *Id.* at 606.

Accordingly, Texas common law prohibits the assignment of legal malpractice claims by the client to a third person. Texas statutory law may, however, transfer legal malpractice claims by operation of law. *See, e.g.,* the Texas Probate Code, discussed by the *Britton* court at 81 F.3d at 605. Thus, this court must explore whether the general rule of the Texas common law would apply to this case.

As will be discussed below, the legal malpractice claims belonging to the debtors in the underlying bankruptcy cases passed to the debtors in possession by operation of law. By operation of law, the debtors in possession held the claims for the benefit of the bankruptcy estates. By authorization of law the plaintiff succeeded the debtors in possession as the representative of the bankruptcy estates to prosecute the claims. Does the Texas law prohibit this type of "assignment"?

First, Texas cases do not address transfers of legal malpractice claims by operation of the United States Bankruptcy Code. The Fifth Circuit in *Britton* recognized that Texas statutes may authorize transfers of legal malpractice claims by operation of law, thus, at least suggesting, that a transfer by operation of law may be an open issue in Texas. *See* 81 F.3d at 605. Similar to the Texas Probate Code transfer of the claim to the guardian in *Britton,* legal malpractice claims owned by a debtor pass from the debtor to the debtor in possession, a fiduciary, by operation of law. In *Britton,* the Fifth Circuit suggested that the probate court could not transfer by court order the claim from the guardian. But, unlike that analysis of Texas law, under the Bankruptcy Code, the bankruptcy court can order the transfer to an entity created pursuant to the Code to represent the bankruptcy estate.

Second, a transfer by and pursuant to the Bankruptcy Code does not implicate any of the general policy concerns discussed by the

cases prohibiting the assignment of legal malpractice claims. The Bankruptcy Code transfer is not a marketplace transaction. The debtors in possession did not sell the claims to an economic bidder. Rather, under the Code, a legal entity was created to stand in the shoes of the debtors in possession to be the representative of the bankruptcy estates. This is not a merchandizing of legal malpractice claims. This is not an effort to replace a judgment-proof, uninsured defendant with a solvent defendant. To the contrary, this is a situation designed to permit an insolvent client to pursue legal malpractice claims.

Third, a transfer by and pursuant to the Bankruptcy Code does not implicate any of the specific factual situations actually addressed by the courts. This is not the assignment of a claim by a party in litigation to its adversary. This is not the selling of a claim. This is not a device to replace a judgment-proof, uninsured defendant with a solvent defendant.

Fourth, a transfer by and pursuant to the Bankruptcy Code does not run afoul of the Texas articulation last stated in *Booth:*

> Assignment should be permitted or prohibited based on the effect it will likely have on modern society and the legal system in particular. The policy considerations noted above persuade us that allowing assignability would debase the legal system and imperil the attorney-client relationship.

895 S.W.2d at 771. Skadden offers no reason why permitting a legal entity created pursuant to the Bankruptcy Code to litigate a debtor's legal malpractice claim on behalf of the debtor's bankruptcy estate should have any adverse effect on "modern society" or the legal system. Rather than debase the system or harm the attorney-client relationship, it may have just the opposite effect. A system designed to permit the adjudication of a bankrupt's legal malpractice claims for the benefit of the bankrupt's estate may actually strengthen the legal system by enhancing its legitimacy in the eyes of those economically affected by it.

Parenthetically, the court must accept, after *Britton,* the policy statements supporting the Texas common law. But, curiously, the Texas cases, while recognizing that not all states have found that the same rule must be established to protect the legal systems in those states from the stated evils, offer no analysis of whether the evils sought to be prevented are more imagined than real.

This exercise demonstrates that it is not a foregone conclusion that Texas law would hold that the transfer of the legal malpractice claims in this case to Jewel would be governed by its general rule. If it is not a foregone conclusion, this court concludes that dismissal of the counts on a Rule 12(b)(6) motion would be inappropriate.

But, in any event, the transfer of the legal malpractice claims here occurred pursuant to federal, not state, law. Federal law governs. The debtors' malpractice claims became property of their respective bankruptcy estates. 11 U.S.C. § 541(a). Their plans of reorganization, confirmed by order of this court, transferred the claims as property of the estates to Jewel. 11 U.S.C. § 1123(a)(5)(B). Jewel was properly organized pursuant to the Code for that purpose. *See McFarland v. Leyh (In re Texas Gen. Petroleum),* 52 F.3d 1330, 1334–35 (5th Cir. 1995). Jewel became the representative of the bankruptcy estates to prosecute the claims. 11 U.S.C. § 1123(b)(3). The Bankruptcy Code does not except the debtors' legal malpractice claims from its provisions. The sections cited refer to the transfer of "all or any part of the property of the estate" and "any claim . . . belonging to the debtor." Jewel may prosecute the claims. Of course, in prosecuting the claims, non-bankruptcy law will be applied. But the assignment issue of Texas law is not an element of the claims for relief.

The parties must recall that the construction of the Bankruptcy Code is a holistic endeavor. *United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The Code must be read to give effect to its entire scope. The Code contemplates that a debtor in possession prior to a Chapter 11 reorganization plan confirmation hearing may not liquidate all its assets. The preservation of its business, here involving

1500 retail stores employing 10,000 people and effecting 25% of the nation's jewelry business, with the corresponding economic impact on its suppliers, took precedent over liquidating its legal malpractice claims. The Code permits that liquidation to be accomplished by a post-confirmation entity. Congress has been constitutionally delegated the exclusive authority to enact bankruptcy laws. It has exercised that authority comprehensively by enacting the Code. Texas law, to the extent not compatible with the Code, cannot frustrate the Code. *See, Morgan City v. South La. Elec. Coop.,* 49 F.3d 1074 (5th Cir.1995).

Accordingly, Skadden's motion to dismiss counts 1, 2, 3, 4, 5, 7, 8 and 9 based on the legal malpractice assignment issue must be denied.

The court has dealt at length on the legal malpractice assignment issue because had Skadden prevailed on this motion, most of the second amended complaint would have been dismissed. The remainder of the motion can be addressed in short order.

Skadden moves to dismiss counts 2, 5, 7, 8, 9, 12 and 13 on the grounds that the counts seek, in part, recovery for damages to noteholders or other creditors of the debtors or to an ESOP, none of which were Skadden's clients. Jewel concedes, in effect, that if limited to an attorney-client relationship, Jewel's claims on behalf of the noteholders and creditors of the debtors must fail. But, Jewel argues, its claims assert that Skadden acted outside of the attorney role as a third party to assist persons other than its clients and, in doing so, may be subject to each of these causes of action. Jewel acknowledges that discovery will determine if these claims can be pursued. But, on a Rule 12(b)(6) motion, it must be afforded that opportunity. The court agrees. The court cannot conclude that Jewel can prove no set of facts that would take Skadden outside the attorney role and therefore be subject to liability on these counts. To the extent that count 13 only alleges a remedy, dismissal is not the appropriate relief, at this time.

With regard, however, to counts 3, 4, 8, and 9, the District Court's decision in *Jewel Recovery, L.P., v. Gordon, et al.,* case no.

3:94–CV–1052–X (November 6, 1995), may be applicable. As a unit of the District Court, this court must apply the decisions of that court. Until Jewel has had an opportunity to engage in further discovery, application of that decision is premature.

Accordingly, Skadden's motion to dismiss counts 2, 5, 7, 8, 9, 12 and 13 based on the privity of representation issue must be denied.

Skadden moves to dismiss count 6 based on the running of the statute of limitations. Count 6 alleges a violation of the Texas Securities Act, specifically Tex.Rev.Civ.Stat. Ann. art. 581–33F and art. 581–33A(2). Tex.Rev.Civ.Stat.Ann. art. 581–33H(2) provides a two-tier limitations period. The claim must be brought within the lesser of three years from the discovery of the violation or five years from the date of sale. Skadden contends that the sale occurred by June 11, 1987. Because the complaint had not been filed by June 11, 1992, Skadden contends that the complaint must be dismissed.

Jewel again asserts that dismissal is premature. Jewel argues that the securities had been issued on June 11, 1987, but that sales may have occurred later. Jewel contends that discovery will reveal if sales occurred after December 30, 1987, which would survive the limitations.

The court concludes that because a Rule 12(b)(6) dismissal would preclude that discovery, the motion must be denied. If discovery reveals that sales occurred more than five years before the filing of the complaint, the court will expect Jewel to voluntarily dismiss count 6. Otherwise, Skadden may renew the issue on a motion for summary judgment, including its contention that the issue date is the sales date under the statute.

Skadden moves to dismiss count 10, unjust enrichment, on the ground that it constitutes a remedy under Texas law, not a separate claim for relief. While the court agrees, *see Jewel Recovery, L.P., v. State Street Bank and Trust Company,* adv. no. 393–3971, at pages 11–12 (December 19, 1994), dismissal is not the remedy.

Skadden moves to dismiss counts 6, 8, 9, 11 and 12 for failure to plead fraud allegations with the particularity required by Fed. R.Civ.P. 9(b), made applicable by Bankruptcy Rule 7009. Jewel contends that it has either sufficiently complied with the rule or that the rule does not apply. Jewel has met the notice pleading requirement of the civil procedure rules. The court will require that Jewel amend its pleading to provide particulars after it has had an opportunity to complete its discovery. If Jewel is to prevail, it will have to specify its contentions in greater detail. Those amendments, with scheduling protection to permit their further consideration by Skadden, should moot the Rule 9(b) motion.

Based on the foregoing,

**IT IS ORDERED** that the motion to dismiss under Fed.R.Civ.P. 12(b)(6) is **DENIED** without prejudice to reasserting the issues as the litigation progresses, but subject to the court's analysis contained in this ruling.

**IT IS FURTHER ORDERED** that the motion to dismiss under Fed.R.Civ.P. 9(b) is **CARRIED** with the adversary proceeding to be resolved as provided in this ruling.