Affirmed
and Opinion filed September 1, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00592-CV

____________

 

WILLARD E. BROWN III, Appellant

 

V.

 

GEORGE MAYNARD GREEN AND SHEEHY,
LOVELACE & MAYFIELD, P.C., Appellees

 



 

On Appeal from the 74th
District Court

McClennan County, Texas

Trial Court Cause No. 2003-3122-3

 



 

O P I N I O N








Pursuant to section 73.001 of the Texas
Government Code, the Texas Supreme Court has transferred this cause from the
Tenth Court of Appeals to the Fourteenth Court of Appeals.  Tex. Gov=t Code Ann. ' 73.001.  In this
cause, Willard E. Brown III appeals from a grant of summary judgment favoring
appellees, attorney George Maynard Green and the law firm of Sheehy, Lovelace
& Mayfield, P.C.  Brown sued appellees alleging breach of fiduciary duty
and professional malpractice.  The trial court granted summary judgment on both
traditional and no-evidence grounds against each of these causes of action.  In
four issues on appeal, Brown attacks the trial court=s grant of (1) a
traditional summary judgment against the breach of fiduciary duty cause of
action; (2) a no-evidence summary judgment against that cause of action; (3) a
traditional summary judgment against the malpractice cause of action; and (4) a
no-evidence summary judgment against that cause of action.[1] 
We affirm.

I.  Background

Brown asserts that appellees provided him
with legal advice and services over a twelve-year period beginning in 1987. 
Brown further alleges that in 2002, appellees began representing his now former
wife in divorce proceedings and other lawsuits against Brown, utilizing
confidential information gained during the prior relationship with Brown. 
Although Brown maintains that a continuous, albeit often informal,
attorney-client relationship existed from 1987 to 1999, he emphasizes certain
matters as the basis for his claim that appellees breached their fiduciary duty
to him by using his own confidential information against him.  Included among
these matters are (1) involvement of Brown and appellees in events related to a
limited partnership; (2) the handling of Afamily resources,@ including
management of trust accounts, mineral assets, and of separate and community
property; and (3) issues surrounding the Bolton Foundation, a charitable
foundation formed by the father of Brown=s ex-wife,
Catherine Bolton.[2] 
Brown additionally contends that appellees breached their fiduciary duty by
violating an attorney=s duties of loyalty and candor to a client
and engaging in various inappropriate conduct, described in detail below.  Brown
further contends that appellees committed malpractice by manufacturing evidence
and by filing suit against Brown.








As stated above, appellees brought
traditional and no-evidence grounds for summary judgment on both Brown=s breach of
fiduciary duty and malpractice causes of action.  The trial court granted
summary judgment without specifying the basis therefore.  Accordingly, if we
find that the judgment is supported by the no-evidence grounds, we need not
consider the traditional grounds raised.[3] 
Because, in this opinion, we indeed find that judgment was properly granted on
the no-evidence grounds, we will consider only the evidence Brown produced in
response to the no-evidence motion.  See City of Keller v. Wilson, 168
S.W.3d 802, 825 (Tex. 2005) (explaining that the rule governing no-evidence
summary judgments does not permit evidence to be filed in support of such a
motion; thus, consideration is limited to the evidence contrary to the motion).[4]








B.  Brown=s Affidavit[5]








In his affidavit attached to his response,
Brown stated that he first met Green in 1987 at a meeting of investors in an Aoil and gas
limited partnership . . . EPC 1980-1.@  Green, an
attorney with Sheehy, Lovelace & Mayfield, P.C., was then representing
another investor.  At the meeting, certain minority interest owners expressed
concern with the management of the partnership by the general partner.  Green
spoke at this meeting and subsequent meetings, and eventually, Brown contacted
Green personally and offered to head up an effort to resolve the minority group=s differences with
the general partner.  Brown says that he shared specifics with Green about his
investment in EPC 1980-1.  As the effort progressed, Brown wrote letters to
other limited partners which Green reviewed for liability purposes.  Green
further advised Brown regarding obtaining indemnity forms from the other partners. 
In January 1989, the general partner filed a declaratory judgment action
against the limited partners.  The limited partners hired a different law firm
than Sheehy, Lovelace & Mayfield, but Brown averred that Green Atypically attended@ status meetings
on the litigation.  Brown further asserted that he consulted with Green
regarding the terms of service for the other law firm and that Green agreed
Brown could continue to seek his advice regarding any potential liability Brown
might have in the matter.  According to Brown, he and Green discussed the
status of the case A[f]rom time to time.@  The case settled
in 1990.  While considering the feasibility of forming a new general partner
for EPC 1980-1, Brown told Green that Athe vast majority@ of the assets
owned by Brown and his wife were in his wife=s name and that
most of his income derived from EPC 1980-1.  He states that Green advised him
to take compensation, in the event he managed the new general partner, in the
form of reimbursements and perks rather than salary.  Brown used a firm other
than Sheehy, Lovelace & Mayfield to form the new general partner.

In his affidavit, Brown further states
that A[w]hen personal
matters involving my family arose, . . . I sought advice from [Green].@  He and Green Aenjoyed a friendly
relationship,@ and Green rarely billed him.

In 1996, Brown recommended to his wife=s half-sister, Margie
Clifton, that Green draft a new will for her.  Afterwards, Clifton fell into a
dispute regarding management of certain trusts of which she was a beneficiary. 
Brown again urged Clifton to consult Green, and Green filed suit on Clifton=s behalf against
her son.  Brown maintains that during this time, he Arepeatedly voiced
[his] concerns@ to Green about the potential for his being sued for
advising Clifton.  According to Brown, Green Aagreed that he
would serve as [Brown=s] attorney in any matters relating to the
Clifton lawsuit.@  Although Brown told Green to bill him,
Green insisted that Clifton would not want Brown to incur any expenses for
having advised her.  Brown says that during this litigation, he shared
confidential information with Green regarding various disputes involving his
wife=s family.  He gave
Green Aa great deal of
financial information@ regarding his wife=s trusts, which
were similar to Clifton=s.  When Brown was noticed for deposition
in the litigation, Green originally agreed to represent him and even filed a
motion to quash on Brown=s behalf.  Green subsequently told Brown
that he could not represent him at the deposition; however, Green did
coordinate to some extent with the counsel hired to represent Brown.  Brown
further maintains that he was very involved in Clifton=s prosecution of
the lawsuit and that his agreement with Green was that Green had represented
him in the past and could represent him in the future but could not represent
him at the deposition.  According to Brown, Clifton was represented in the
matter by Sheehy, Lovelace & Mayfield until 1999.








 Green filed a divorce petition on Bolton=s behalf in
January 2002.  One issue that arose during the divorce proceedings involved
control of the Bolton Foundation, a charitable foundation created by Bolton=s father.  At that
time, Bolton, Brown, and Brown=s sister were the three foundation
directors.  According to Brown, Bolton asked him and his sister to resign, but
they refused.  When Green attempted to change the foundation=s address, Brown
told him that he could not act without board authorization.  At one point,
Brown=s sister received
a letter from Green stating that Bolton had discovered a resignation letter
from the sister and had accepted it.[6] 
Brown states that he knew that (1) no such letter had been submitted, (2)
Bolton could not accept a director=s resignation
without board approval, and (3) the resignation was a Abogus document.@

In April 2002, Green filed a lawsuit on
behalf of the foundation, seeking removal of Brown and his sister from the
board.  Brown contends that the filing of the lawsuit caused him to hire an
attorney and incur legal costs.  In June 2002, after Brown filed a motion to
disqualify Green in the divorce action, Green withdrew as counsel in that case
and in the Bolton Foundation lawsuit.  The Bolton Foundation lawsuit was
subsequently nonsuited on June 24, 2002.  Charles Hodges, an attorney not
associated with appellees, replaced Green as Bolton=s attorney in the
divorce action, and John Cullar, also not associated with appellees, replaced
Green in the Bolton Foundation lawsuit, filing new pleadings.  Brown then filed
a second motion to disqualify Green in the divorce action, alleging that Green
was sharing confidential information with Hodges.

C.  Divorce Attorney=s Affidavit








In his affidavit, Mark Morris, Brown=s attorney in the
divorce action, averred that when he viewed certain documents made available
but not produced in the case, he discovered, among other things, the following:
(1) an Aengagement letter@ from Green to
Bolton in which Green allegedly stated that the divorce would be filed in a
particular judge=s court because of the firm=s Aspecial
relationship with that Court@; (2) a handwritten note from Bolton to
her subsequent attorney, Hodges, to the effect that a tax attorney was advising
her to claim EPC 1980-1 as her separate property because her assets had
benefitted the community to such an extent that Brown was able to invest in
that company in his own name; (3) a letter from Bolton to Hodges asking whether
Hodges would be disqualified for the same reason Green was, i.e.,
possession of Brown=s confidential information; and (4) a
letter from Hodges to Bolton suggesting that he could no longer represent her
due to Acompetency issues@ and that she
should seek psychiatric treatment.[7]

D.  Other Evidence








Other evidence attached to Brown=s summary judgment
response includes:  (1) a pair of hearing transcripts relating to a motion to
compel in the Bolton Foundation case in which the trial judge held that the
attorney-client privilege between Green and Bolton had been waived for certain
documents and that the divorce and the Bolton Foundation cases were Ainextricably
intertwined@; (2) legal bills from appellees to Brown relating to
various matters; (3) bills from various other attorneys who have represented
either Brown or Bolton; (4) correspondence between Brown and appellees; (5)
Brown=s motion to
disqualify counsel in the divorce action and the associated hearing transcript;
and (6) pleadings and other filings relating to the divorce and the Bolton
Foundation litigation.[8] 
In his briefing, Brown additionally references the fact that at some point he
was sued over his involvement in distributions to his wife from trusts of which
she was a beneficiary.  He terms this lawsuit the ABank of America
litigation.@  However, there is scant evidence attached to his
summary judgment response regarding the existence of such a lawsuit and nothing
to indicate any specifics regarding claims or defenses therein.

II. Breach of Fiduciary Duty

In his first two issues, Brown contends
that the trial court erred in granting, respectively, appellees= traditional and
no-evidence motions for summary judgment on Brown=s breach of
fiduciary duty cause of action.  We begin by examining the ruling on the
no-evidence motion.

A.  Standards and Elements

In a no‑evidence summary judgment
motion, the movant contends that there is no evidence of one or more essential
elements of the non-movant=s cause of action.  Tex. R. Civ. P. 166a(i).  A no-evidence motion must
be granted unless the non-movant produces competent evidence raising a genuine
issue of material fact.  Id; Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008) (per curiam).  In reviewing a no‑evidence summary
judgment, we examine the record for evidence that would enable reasonable and
fair‑minded jurors to differ in their conclusions.  Hamilton, 249
S.W.3d at 426.  We utilize a de novo standard of review.  Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  Other than
arguing that the grounds presented in the motion were insufficient to support
summary judgment, the nonmovant may not urge any issues on appeal not raised in
the trial court.  See City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678-79 (Tex. 1979); Bynum v. Prudential Residential Servs.,
L.P., 129 S.W.3d 781, 791 (Tex. App.CHouston [1st
Dist.] 2004, no pet.); Franco v. Slavonic Mut. Fire Ins. Ass=n, 154 S.W.3d 777,
785-86 (Tex. App.CHouston [14th Dist.] 2004, no pet.); see
also Tex. R. App. P. 33.1(a).








In order to prevail on a breach of
fiduciary duty claim, a plaintiff must prove:  (1) the existence of a fiduciary
relationship between the plaintiff and the defendant, (2) a breach by the
defendant of his or her fiduciary duty to the plaintiff, and (3) an injury to
the plaintiff or benefit to the defendant as a result of the breach.  Lundy
v. Masson, 260 S.W.3d 482, 501 (Tex. App.CHouston [14th
Dist.] 2008, pet. denied).  An attorney can breach his or her fiduciary duty to
a client by, among other things, failing to disclose a conflict of interest,
failing to deliver the client=s funds, placing his or her personal
interests over those of the client, misusing client confidences, taking
advantage of the client=s trust, self‑dealing, and making
misrepresentations.  See Goffney v. Rabson, 56 S.W.3d 186, 193 (Tex.
App.CHouston [14th
Dist.] 2001, pet. denied).

In their no-evidence motion, appellees
acknowledged that they had, however briefly, represented Brown in the past,
and, thus, to some extent, owed him a fiduciary duty.  They further contended,
however, that Brown could produce no evidence on the other elements,
specifically that (1) there was a substantial relationship between the former
representation and the actions of which Brown complains in the present lawsuit;
(2) Brown divulged confidential information to appellees during the period of
representation; (3) appellees breached their fiduciary duty to Brown by
subsequently using or disclosing his confidential information; (4) appellees
thereby caused harm to Brown; and (5) Brown in fact suffered any damages.  The
trial court granted the motion without specifying the basis therefor.

B.  Existence of Duty

As mentioned, at least to some extent,
appellees acknowledge the existence of a fiduciary duty because they have
represented Brown in the past.  See Meyer v. Cathey, 167 S.W.3d 327, 330
(Tex. 2005) (explaining that an attorney-client relationship gives rise to a
fiduciary duty as a matter of law).  Indeed, Brown=s affidavit and
other summary judgment evidence establishes that Green and Sheehy, Lovelace
& Mayfield provided legal representation or advice to Brown on several
occasions.  Consequently, we turn to the question of whether Brown has
presented competent evidence raising a genuine issue of material fact as to
whether appellees breached their fiduciary duty to Brown.

 








C.  Breach

Brown asserts the following categories of
arguments regarding breach of a fiduciary duty in his briefing and his response
to the motion for summary judgment:  (1) revelation or misuse of confidential
information, (2) breaches of a fiduciary=s duties of
loyalty and candor, and (3) various types of inappropriate conduct.  We will discuss
each category in turn.

1.  Confidential Information

Brown=s primary breach
of fiduciary duty argument appears to be that he relayed confidential
information to Green, who then either revealed that information or misused that
information against Brown in the various litigations:  the divorce, the Bolton
Foundation litigation, and the Bank of America litigation.  Brown acknowledges
that when a client alleges breach of a fiduciary duty based on inappropriate
use or disclosure of confidential information, the client must establish actual
misuse or disclosure and not merely a genuine threat of misuse or disclosure. 
See City of Garland v. Booth, 895 S.W.2d 766, 772-73 (Tex. App.CDallas 1995, writ
denied); Capital City Church of Christ v. Novak, No. 03-04-00750-CV,
2007 WL 1501095, at *3-4 (Tex. App.CAustin May 23,
2007, no pet.) (mem. op.).  In his discussion of the law relating to the breach
element, however, Brown further states that A[i]n order to show
a breach . . . there must be evidence of a >substantial
relationship= between the prior representation and the current
case,@ citing Capital
City Church.  This statement is a misreading of Capital City Church and
the cases relied upon therein.








The plaintiff/former client in Capital
City Church argued that a particular presumption applicable to attorney
disqualification was also applicable to raising a fact issue on a breach of
fiduciary duty by an attorney.  2007 WL 1501095, at *2-3.  Specifically, a
former client may attempt to disqualify his or her former attorney by showing
that a Asubstantial
relationship@ exists between the prior representation and the
current case.  Id. at *3.  When such a relationship existsCinvolving specific
similarities in factual issues and liability issues or strategiesCit is presumed
that the former client revealed confidences to the attorney that would be at
risk of revelation in the subsequent case.  Id. at *3-4.  Although the
attorney would not be presumed to have revealed the confidences, the attorney
should still be disqualified because of an appearance of impropriety.  Id.
at *3.  The Austin Court of Appeals rejected the plaintiff=s argument that
proof of a Asubstantial relationship@ could be used to
establish a presumption of breach of a fiduciary duty, holding instead that the
former client must produce evidence of an actual disclosure of
confidences.  Id. at *3-4. (citing Booth, 895 S.W.2d at 773, and Reppert
v. Hooks, No. 07-97-0302-CV, 1998 WL 548784, at *28-29 (Tex. App.CAmarillo Aug. 28,
1998, pet. denied)).  While a substantial relationship between prior
representation and a subsequent case could be relevant in determining whether
the attorney breached a fiduciary duty, such a relationship is neither
sufficient nor necessary to raise a fact issue as to breach.  Id. at
*4.  Accordingly, to show breach based on misuse or disclosure of confidential
information, Brown was required to produce evidence of actual misuse or
disclosure but was not required to establish a substantial relationship between
representations.  See Booth, 895 S.W.2d at 772-73; Capital City
Church, 2007 WL 1501095, at *3-4.

In his brief, Brown makes the following
arguments regarding Green=s misuse or revelation of confidential
information:  (1) financial matters disclosed to Green in confidence, including
those relating to separate property and income, subsequently became issues in
the divorce proceedings; (2) the relative weakness of Brown=s financial
position compared to that of Bolton was revealed to Green in confidence and
subsequently exploited in Amultifarious@ litigations; (3)
facts concerning dissension in Bolton=s family that
Brown revealed to Green were subsequently used against Brown in the Bolton
Foundation lawsuit; (4) information imparted to Green regarding Brown=s role in Bolton=s trust
distributions was subsequently used in the Bank of America lawsuit; and (5)
information concerning Bolton=s alleged mental health problems was
exploited by Green to Brown=s detriment.

 








a.)  Financial Matters as Issues in Divorce








Appellant first argues that financial
matters he discussed with Green became issues in the divorce proceedings.   We
begin by examining the evidence Brown produced regarding the types of financial
information he passed to Green.  In his affidavit, Brown states that he told
Green the amount of his initial investment in EPC 1980-1, the percentage
ownership in the partnership this gave him, and that it represented a Avery significant@ investment for
him.[9] 
Brown states that Green advised him from time-to-time regarding the
restructuring of EPC 1980-1 and Brown=s potential
liability for involvement therein.  Brown told Green that most of his family=s assets were in
his wife=s name.  Brown
further states that during the course of the Clifton litigation, he [Brown] Adivulged a great
deal of financial information@ to Green relating to the trusts for which
Bolton and her sister, Clifton, were beneficiaries.  Brown also cites to the
inventories filed by Bolton and himself in the divorce.  Both parties listed
EPC 1980-1 as community property, thus making valuation of the asset an
apparent issue in the divorce.  In Brown=s testimony at a
hearing on a motion to disqualify Bolton=s subsequent
attorney in the divorce proceedings (Hodges), Brown stated generally that he
imparted information to Green believing it to be confidential.  That
information included matters at issue in the divorce, such as the value of EPC
1980-1.  Brown also compiled confidential information on Bolton=s and Clifton=s trusts for use
in the Clifton litigation.[10] 
On appeal, Brown specifically alleges that Green (1) gained information
regarding Brown=s investment in EPC 1980-1 and gave advice
on matters that Amay@ have affected the
value of that investment; (2) had preexisting knowledge of the trusts of which
Bolton was a beneficiary; and (3) was aware of Aseparate property
and . . . income matters@ that were disputed in the divorce and
made community property claims on certain assets in the divorce based on his
prior knowledge of those assets.

Regarding EPC 1980-1, assuming that the
value of EPC 1980-1 was an issue in the divorce, Brown fails to explain, much
less prove, how Green supposedly used Brown=s confidential
information.  In other words, Brown does not go beyond claiming that Green had
the confidential information and that value of the partnership was at issue in
the divorce.  He seems to argue that there was a substantial relationship
between the prior representation concerning EPC 1980-1 and issues in the
divorce, and that such relationship constitutes evidence of Green=s breach of his
fiduciary duty.  This argument is expressly refuted by the cases Brown himself
relies upon in his briefing.  See Booth, 895 S.W.2d at 772-73 (holding
that when a client alleges breach of a fiduciary duty based on disclosure of
confidential information, the client must establish actual disclosure and not
merely a genuine threat of disclosure); Capital City Church, 2007 WL 1501095,
at *3-4 (holding that substantial relationship between prior representation and
subsequent case did not, standing alone, raise fact issue on breach of
fiduciary duty).  While the record demonstrates that the value of EPC 1980-1
may have been an issue in the divorce, there is no indication that the issue
was contentious or even that the parties disagreed on the value, much less that
Green used any confidential information in his representation of Bolton in the
divorce action.

Regarding the information Brown allegedly
gave Green relating to Bolton=s and Clifton=s trusts, Brown
offers no explanation as to how this information was used in the divorce.  The
few documents concerning the divorce proceedings in the record do not reveal
any issues concerning the trusts or the information in question.  In her
inventory, Bolton listed the trusts under AAssets Held for
the Benefit of Catherine Ross Bolton Brown as a Beneficiary.@  Brown appears to
have not listed the trusts in his inventory, and there is no indication that he
disagreed with her characterization of her trusts or made any claim against
them in the divorce.  Consequently, there is no evidence that any confidential
information Green possessed regarding the trusts was disclosed or misused in
the divorce.








The remainder of Brown=s claims and
statements pertaining to the use of confidential information in the divorce
proceedings are too general and conclusory in nature to support a claim of
breach of fiduciary duty.  See Brownlee v. Brownlee, 665 S.W.2d 111, 112
(Tex. 1984) (holding statements in affidavit were insufficient to raise fact
issue and Ashould have gone further and specified factual matters
such as the time, place, and exact nature of the alleged [occurrence]@); Wright v.
Greenberg, 2 S.W.3d 666, 675 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied) (holding statements in affidavit were insufficient to
raise fact issue as they consisted of Aconclusory
statements . . . in general terms@).  While Brown
states that Green was aware of Aseparate property and . . . income matters@ that became
issues in the divorce and that Green made community property claims on certain
assets based on his prior knowledge of those assets, at no point does Brown
specify what these alleged claims, matters, or assets were.  Brown also claims
to have told Green in confidence that most of his family=s assets were in
his wife=s name, but he
does not explain or provide proof or examples of how Green used or disclosed
this information in the divorce.  Brown has produced no evidence supporting the
conclusion that Green actually used any confidential information regarding
specific matters in the divorce proceedings.

b.)  Relative Weakness of Financial Position








Next, Brown argues that Green misused his
knowledge of the relative weakness of Brown=s financial
position, compared to that of his wife, by filing multiple lawsuits (the
divorce, the Bolton Foundation litigation, and the Bank of America litigation)
as part of a Agrand design@ to Awear [him] down
financially and emotionally.@  In support of this contention, Brown
cites his affidavit statement that he disclosed to Green that Aas to the assets
owned by [Brown] and [Bolton], the vast majority of them were in her name@ and that Bolton Ahad a substantial
income from trusts and properties inherited through her family relative to
[his] income which was primarily from EPC 1980-1.@  Elsewhere in the
affidavit, Brown complains that the Bolton Foundation lawsuit caused him to
incur Afinancial
expenditure . . . during an otherwise expensive . . . divorce@ and that Athe Bank of
America lawsuit . . . caused [him] to have to hire attorneys.@

Even taking as true that Brown told Green
in confidence about the discrepancy in Brown=s and Bolton=s financial
conditions, there is no evidence, only conjecture, that Green used this
information and filed the referenced cases in a Agrand design@ to Awear [Brown] down
financially and emotionally.@[11]  See generally
Mattly v. Spiegel, Inc., 19 S.W.3d 890, 896 (Tex. App.CHouston [14th
Dist.] 2000, no pet.) (holding that pleadings are presumed to be filed in good
faith and not for purposes of harassment and burden is on party asserting
otherwise).  Brown does not support this claim in the reviewable, non-stricken
portions of his affidavit, and he has not cited to or produced other evidence
supporting this assertion.  Moreover, regarding the three lawsuits in
question:  (1) Brown does not suggest that Bolton would not have filed for
divorce without Green as her attorney (indeed she had previously filed and
nonsuited a divorce action with a different attorney and subsequently pursued
the action with a third attorney); (2) Brown points to no part of the divorce
proceedings demonstrating Green=s alleged attempt to exploit Bolton=s economic
advantage; (3) Brown repeatedly asserts in his affidavit and argument that the
Bolton Foundation litigation was an attempt to have him removed from the board
of directors of Bolton=s family foundation, thus refuting to some
degree the notion that is was for the purpose of wearing him down financially;
and (4) Brown has failed to produce evidence tying Green to the Bank of America
litigation, which was filed by an attorney not associated with appellees. 
Brown=s contention that
Green misued confidences by exploiting his relatively weak financial position
is without support in the record.

c.)  Family Dissension








Brown further contends that Green used
information Brown imparted regarding dissension in Bolton=s family in order
to sue Brown in the Bolton Foundation case.  Brown says that Green Achose to
orchestrate the matter in the context of a family dispute.@  In support of
these contentions, Brown cites to his affidavit and to the original petition
Green filed in the Bolton Foundation litigation.  The pleading is evidence only
that such a lawsuit was filed and that certain allegations were made therein;
it does not by itself establish that any confidential information was revealed
by Brown or misused or disclosed by Green.  See generally Laidlaw Waste
Systems (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 660 (Tex. 1995)
(holding that pleadings generally do not constitute competent summary judgment
evidence).  In the section of his affidavit Brown cites, he states simply that A[d]uring the
course of [the Clifton litigation] I shared with [Green] confidential
information regarding areas of dispute between Willard and various members of
[Bolton=s] family.@  It is not clear
from the context who the AWillard@ mentioned is; it
could be Brown himself or another person named Willard.  Regardless, nothing in
this statement suggests that Green used the referenced confidential information
in the subsequent Bolton Foundation lawsuit.[12]

It appears that Brown is arguing in his
briefing that the mere fact that (1) Brown gave confidential information
regarding family dissension to Green, and (2) Green filed a lawsuit regarding
the Bolton Foundation, means that Green must have used the confidential
information in filing the lawsuit.  However, this conclusion does not logically
flow from the evidence or arguments provided.  The original petition in the
Bolton Foundation lawsuit mentions Airreconcilable
differences@ between Brown and Bolton (apparently referencing the
divorce action), but makes no reference to any dissension within Bolton=s family or
between Bolton=s family and Brown.  Indeed, Bolton has provided no
evidence that any alleged family dissension played a role in the Bolton
Foundation lawsuit.  Accordingly, Brown=s assertion that
Green used confidential information regarding family dissension in pursuing the
Bolton Foundation lawsuit is without support in the record.

 








d.)  Role in Trust Distributions

Next, Brown asserts that Green improperly
used information Brown provided regarding Brown=s role in Bolton=s trust
distributions in the Bank of America lawsuit.  He contends that although Green
did not file the Bank of America lawsuit himself, he visited with the filing
attorney not long before the petition was filed.  In support of this
contention, he cites to time records attached to his motion for rehearing,
which as discussed above, we are not able to consider in this appeal.[13] 
Although in his affidavit, Brown asserts that he revealed information regarding
Bolton=s trusts, he does
not state therein that this information was used against him in the Bank of
America litigation.  Our review of the record has not revealed any evidentiary
support for Brown=s contention regarding the Bank of America
litigation.

e.)  Bolton=s Mental Condition








Lastly, Brown contends that Green
exploited knowledge of Bolton=s mental condition for his own benefit. 
In support of this contention, Brown initially cites to a nonexistent portion
of the record.[14] 
He subsequently cites to portions of his affidavit, but nothing in the
reviewable portions of the affidavit addresses his wife=s mental state or
any information regarding this subject that Brown may have mentioned to Green. 
Brown does not cite any evidence in the record, and our review has not
uncovered any, lending support to his contentions that (1) he disclosed to
Green confidential information about Bolton=s mental state,
and (2) Green used that information for his own benefit or to harm Brown.  The
mental condition confidential information argument is without support in the
record, just as are his other arguments regarding appellees= alleged breach of
fiduciary duty by misusing or revealing confidential information.

2.  Reply Brief:  Loyalty & Candor

In his reply brief, Brown argues that
Green breached his fiduciary duty simply by filing the divorce action and the
Bolton Foundation case and by assisting in the Bank of America litigation. 
Brown labels this section of the brief ABreach of Fiduciary
Duty:  Loyalty.@  In a section of the reply brief labeled ABreach of
Fiduciary Duty:  Candor,@ Brown argues that Green breached his fiduciary
duty in directing Bolton to falsify the resignation letter of Brown=s sister from the
Bolton Foundation board of directors.  Brown, however, did not make any
arguments based on duties of loyalty or candor in either his trial court
summary judgment response or in his original appellate briefing.[15] 
Brown may not raise them for the first time in an appellate reply brief.  See
Clear Creek Basin Auth., 589 S.W.2d at 678-79; Swaab v. Swaab, 282
S.W.3d 519, 527 n.10 (Tex. App.CHouston [14th Dist.] 2008, pet. dism=d w.o.j.); Bynum,
129 S.W.3d at 791; see also Tex. R. App. P. 33.1(a), 38.3.








Moreover, Brown predicates his breach of
loyalty argument on the premise that the attorney-client relationship between
Brown and Green had not ended by the time the divorce action was filed.  He
also appears to predicate the breach of candor argument on the premise that the
attorney-client relationship had not ended by the time the resignation was
allegedly falsified.  Brown specifically argues that AAppellees have not
produced any termination letter or other evidence that the attorney-client
relationship between Appellant and Appellees was terminated prior to the filing
of the divorce action.@[16]  However, because
this is an appeal from a no-evidence summary judgment, the burden was on Brown,
not appellees, to produce some evidence that the relationship existed at the
relevant time period.  See Tex. R. Civ. P. 166a(i); Hamilton, 249 S.W.3d at 426.  To the
contrary, Brown himself acknowledged in his response to the motion for summary
judgment that the attorney-client relationship between him and appellees had
ended by 1999, at the conclusion of their involvement in the Clifton
litigation.  Having asserted in the trial court that the attorney-client
relationship ended well before the other litigations were filed (in 2002) and
before the alleged falsification of the resignation letter (also in 2002),
Brown is estopped from arguing otherwise on appeal.  Cf. Keith v. Keith,
221 S.W.3d 156, 172 (Tex. App.CHouston [1st Dist.] 2006, no pet.)
(holding party was estopped from arguing on appeal that no evidence supported
court=s holding when
party expressly refuted such contention in the trial court).  For the foregoing
reasons, we reject Brown=s breach of loyalty and candor arguments.

3.  Various Nefarious Conduct








Brown further makes various assertions of
inappropriate conduct by Green and others, including Ablackmail, the
peddling of judicial influence, and suggestions of judicial impartiality [sic].@  He alleges that
Green (1) Awent beyond the bounds of representation into the
realm of being an actor@; (2) continued assisting Bolton even
after officially withdrawing from representation; (3) manufactured evidence in
the Bolton Foundation case; and (4) filed suit for an entity (the Bolton
Foundation) that he did not legally represent.  However, Brown neither explains
how any of these generalized complaints of wrongdoing resulted in a breach of a
fiduciary duty owed him, nor cites authority suggesting that such conduct
constituted a breach of duty under the circumstances of this case.  We decline
to make Brown=s argument for him.  See Robertson v. Sw. Bell
Yellow Pages, Inc., 190 S.W.3d 899, 903 (Tex. App.CDallas 2006, no
pet.) (declining to address issue where party failed to discuss any of the
factors deemed relevant to resolution of the issue); Rudisill v. Arnold
White & Durkee, P.C., 148 S.W.3d 556, 562 n.8 & n.10 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (pointing out that appellants emphasized certain facts
but failed to offer any explanation or authority as to how those facts related
to the grant of summary judgment against them); Wilson & Wilson Tax
Servs., Inc. v. Mohammed, 131 S.W.3d 231, 242 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (A[W]e will not speculate as to the
arguments that could have been brought, or attempt to make those arguments for
them.@).

The trial court properly granted appellees= no-evidence
motion for summary judgment against Brown=s breach of
fiduciary duty cause of action.  Accordingly, we overrule appellant=s second issue.[17] 
Because the no-evidence summary judgment was properly granted, we also
summarily overrule appellant=s first issue, challenging the traditional
summary judgment on this cause of action.

III. Malpractice








In his third and fourth issues, Brown
contends that the trial court erred in granting, respectively, appellees= traditional and
no-evidence motions for summary judgment on Brown=s malpractice
cause of action.  We will again first address the no-evidence motion.  To
prevail on a legal malpractice claim, a plaintiff must show that (1) the
attorney owed the plaintiff a duty, (2) the attorney breached that duty, and
(3) the breach proximately caused the plaintiff=s actual damages. 
Alexander v. Turtur & Assocs., Inc., 146 S.W.3d 113, 117 (Tex.
2004).  In their no-evidence motion, appellees asserted that Brown could
produce no evidence on any of the elements of malpractice.

In his response to the motions for summary
judgment, Brown argued that (1) appellees owed him a duty in his capacity as a
director of the Bolton Foundation (the Bolton Foundation being appellees= client in the
Bolton Foundation case); (2) appellees breached that duty by manufacturing or
altering evidence (the alleged resignation letter from Brown=s sister) and
filing suit against him; and (3) such breach caused Brown to expend time and
money defending the frivolous lawsuit.  Brown, however, did not file the
present lawsuit in his capacity as a director of the Bolton Foundation. 
Nowhere in his petition does he mention suing in his capacity as a director. 
He identifies himself only as an individual in the petition and clearly makes
claims solely in his individual capacity.  Brown offers no explanation or
authority for how he could sue appellees for malpractice in his individual
capacity when he acknowledges that he was not an individual client of appellees
during the time of the Bolton Foundation litigation.[18] 
An attorney only owes a duty of care to his clients and not to third parties,
even if they may have been damaged by the attorney=s representation
of the client.  Barcelo v. Elliott, 923 S.W.2d 575, 577-78 (Tex. 1996); Stancu
v. Stalcup, 127 S.W.3d 429, 432 (Tex. App.CDallas 2004, no
pet.); see also Swank v. Cunningham, 258 S.W.3d 647, 661-62 (Tex. App.CEastland 2008,
pet. denied) (holding that former corporate officers and shareholders could not
maintain legal malpractice action in their individual capacities against law
firm that represented corporation).  Accordingly, the trial court did not err
in holding that Brown produced no evidence to establish the duty element of a
professional malpractice cause of action.








We overrule Brown=s fourth issue. 
Because we uphold the grant of no-evidence summary judgment against this cause,
we need not consider the grant of traditional summary judgment.  Consequently,
we summarily overrule Brown=s third issue.

We affirm the trial court=s judgment.

 

 

/s/      Adele
Hedges

Chief
Justice

 

 

Panel consists of Chief Justice Hedges and Justices Yates and Frost.









[1]  Brown apparently asserted other causes of action
below but does not complain on appeal regarding any trial court action on these
other causes.  Accordingly, we do not address any other causes of action in
this opinion.





[2]  It is not clear from the record whether Brown=s ex-wife has reverted to using her maiden name or
continues to use her married name.  For ease of reference in this opinion, we
shall refer to her by her maiden name ABolton,@ which she apparently used as a middle name even while
married.





[3]  Appellees suggest that because Brown styled his
response specifically as a response to appellees= no-evidence motion, the judgment should be summarily affirmed because
Brown failed to challenge the traditional grounds offered for summary
judgment.  However, the substance of Brown=s
response addresses both no-evidence and traditional grounds raised by
appellees, and we will not read the title of Brown=s pleading as controlling over its substance.  Cf.
Thomas v. Long, 207 S.W.3d 334, 339 (Tex. 2006) (considering substance of
motion despite title used).





[4]  There is some confusion among the parties as to whether we should
consider Brown=s deposition in regards to the
no-evidence motion.  Appellees filed separately a no-evidence motion and a
traditional motion.  As befitting a no-evidence motion, appellees did not file
any supporting materials with that motion.  Appellees filed substantial
documentation with their traditional motion, including Brown=s deposition.  In his combined
response to the summary judgment motions, Brown referenced his affidavit and
other materials attached to the response but neither generally referenced nor
attached his deposition.  However, in his initial appellate brief, Brown cited
copiously to his deposition, relying more often on statements in the deposition
than on statements in the affidavit.  Subsequently, after appellees questioned
such reliance in their brief, in his reply brief, Brown disclaimed any reliance
on his deposition in the trial court or on appeal.

Rule 166a(i), governing no-evidence motions for summary judgment,
states that A[t]he court must grant the motion
unless the respondent produces summary judgment evidence raising a
genuine issue of material fact.@  Tex. R. Civ. P. 166a(i) (emphasis added); see also City of Keller,
168 S.W.3d at 825 (explaining that Rule 166a(i) does not permit evidence to be
filed in support of a no-evidence motion; thus, consideration is limited to the
evidence contrary to the motion); Goss v. Houston Cmty. Newspapers, 252
S.W.3d 652, 654 (Tex. App.CHouston [14th Dist.] 2008, no pet.) (AIf the movant has identified specific elements he
claims lack evidence, we must then determine de novo whether the non‑movant
has produced more than a scintilla of probative evidence to raise a genuine
issue of material fact.@).  It is not incumbent upon a
trial court or an appellate court to search exhibits attached to other motions
for evidence which might raise a material issue of fact.  See, e.g., Bynum
v. Prudential Residential Servs., L.P., 129 S.W.3d 781, 791 (Tex. App.CHouston [1st Dist.] 2004, no pet.)
(refusing to consider affidavit attached to motion for continuance in
evaluating no-evidence summary judgment); Hight v. Dublin Veterinary Clinic,
22 S.W.3d 614, 619 (Tex. App.CEastland 2000, pet. denied) (refusing to consider evidence attached to
motion when considering no-evidence summary judgment).  Because Brown did not
attach or specifically cite to his deposition in his response to the
no-evidence motion and, in fact, specifically denies any reliance thereon in
his reply brief, we will not consider Brown=s deposition in reviewing the grant of no-evidence summary
judgment.  Instead, we confine our review to the evidence Brown produced in
response to the no-evidence motion.





[5]  This discussion of Brown=s affidavit omits sections stricken by the court in
response to appellees= objections.  Brown does not complain on appeal about
the trial court=s grant of these objections.





[6]  Brown alleged that in 2002, Green instructed Bolton
to Amanufacture a resignation@ by taking a 1990 resignation letter from Brown=s sister and marking that it was accepted.





[7]  Although appellees made objections to portions of
Morris=s affidavit, which were similar to objections the trial
court granted in regard to Brown=s
affidavit, appellees apparently failed to obtain a ruling on those objections.





[8]  In his briefing, Brown additionally cites to
evidence he attached to his motion for new trial.  Because there is no
indication in the record that the trial court accepted or considered this
late-filed evidence, we will not consider it in resolving this appeal.  See
Benchmark Bank v. Crowder, 919 S.W.2d 657, 663 (Tex. 1996) (holding that
where nothing in the record indicates leave of court for late filing of a
summary judgment response, appellate court should presume the trial court did
not consider the late‑filed evidence); Auten v. DJ Clark, Inc.,
209 S.W.3d 695, 702 (Tex. App.CHouston [14th
Dist.] 2006, no pet.) (considering evidence attached to motion for new trial
because it was apparent trial court had done so); Stephens v. Dolcefino,
126 S.W.3d 120, 133‑34 (Tex. App.CHouston
[1st Dist.] 2003) (same), pet. denied, 181 S.W.3d 741 (Tex. 2006).

 





[9]  Brown acknowledged in his affidavit that the information regarding
investment amounts in the partnership was publicly available.





[10]  Brown also makes arguments based upon, and cites
extensively to, his deposition testimony as well as exhibits attached to his
motion for new trial.  However, as discussed in detail above, Brown may not
rely on these documents in challenging the no-evidence summary judgment.





[11]  Brown does not contest that Bolton herself would
also have been privy to knowledge of their differing financial conditions as
would any attorney Bolton hired to represent her in the divorce. 





[12]  None of the statements in the affidavit pertaining
to the Bolton Foundation litigation suggest that Green used any confidential
information in that lawsuit.





[13]  See n.8 supra.





[14]  Specifically, Brown cites to AC.R. V. 3, pp. 60-61,@ which based on the form of citation he used, appears to be a citation
to pages 60 and 61 of volume 3 of the clerk=s
record.  No such page exists in that volume.  Neither pages 60-61 of volume 1,
nor pages 660-61, 760-61, 860-61, or 960-61 of volume 3, provide any support
for Brown=s contention.





[15]  Brown does not provide any citations to authority
regarding the duties of loyalty and candor, although courts have used these
terms in describing the duties engendered by a fiduciary relationship.  See,
e.g., Lesikar v. Rappeport, 33 S.W.3d 282, 296-97 (Tex. App.CTexarkana 2000, pet. denied) (citing Montgomery v.
Kennedy, 669 S.W.2d 309, 313 (Tex.1984), and Slay v. Burnett Trust,
143 Tex. 621, 187 S.W.2d 377, 388 (1945)).





[16]  To the extent Brown intended to argue that duties of
loyalty and candor continued after termination of the relationship, he failed
to specifically articulate such an argument or cite any authority in support.





[17]  In his reply brief, Brown additionally cites Rules
1.05 and 1.09 of the Texas Disciplinary Rules of Professional Conduct as
establishing attorney duties that Green breached.  Tex. Disciplinary R. Prof=l Conduct 1.05, 1.09, reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G app. A (Vernon 2005
& Supp. 2009) (Tex. State Bar R. art. X, ' 9).  However, as
discussed above, a party generally may not raise issues for the first time in
an appellate reply brief.  See Clear Creek Basin Auth., 589 S.W.2d at
678-79; Swaab, 282 S.W.3d at 527 n.10; Bynum, 129 S.W.3d at 791; see
also Tex. R. App. P. 33.1(a), 38.3. 
Furthermore, Brown=s contention that these rules establish standards by
which an attorney=s liability may be judged is refuted by the preamble
to the State Bar Rules, which states:

 

These rules do not undertake to define standards of
civil liability of lawyers for professional conduct.  Violation of the Texas
Disciplinary Rules of Professional Conduct does not give rise to a private
cause of action nor does it create any presumption that a legal duty to a
client has been breached. . . .  Accordingly, nothing in the rules should be
deemed to augment any substantive legal duty of lawyers or the extra‑disciplinary
consequences of violating such a duty.  

 

Tex. Disciplinary R. Prof=l Conduct preamble &
15.  A claim that a lawyer has violated a rule of professional conduct should
be raised in a disciplinary proceeding.  McGuire, Craddock, Strother &
Hale, P.C. v. Transcon. Realty Investors, Inc., 251 S.W.3d 890, 896 (Tex.
App.CDallas 2008, pet. denied).  Brown cites no authority,
and we are aware of none, holding an attorney liable solely based on violations
of the disciplinary rules.





[18]  Brown has asserted that appellees last represented
him in 1999; the Bolton Foundation case was filed in 2002.